Charles **HEYMAN**, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

George W. **GOLDEN**, Jr., Plaintiff-Appellant,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**Nos. 73-2879, 73-2912.**

United States Court of Appeals,
Fifth Circuit.

July 15, 1974.

---

Sidney A. Soltz, Miami, Fla., for plaintiffs-appellants.

Robert W. Rust, U. S. Atty., Mervyn L. Ames, Clemens Hagglund, Asst. U. S. Attys., Miami, Fla., Jay R. Weill, Atty., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, David English Carmack, Gordon S. Gilman, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before WISDOM, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

These cases have a common issue. Each plaintiff paid wagering excise taxes and sued for a refund. The government counterclaimed for a substantial unpaid balance on the assessment against each plaintiff. In each case the government moved for and was granted a directed verdict on the issue of the correctness of the assessment.

Each plaintiff's records, such as bet slips, summary sheets and records indicating balances due, were seized by state officials investigating illegal lottery operations. State officers notified the Internal Revenue Service and made the records available to an IRS agent, who prepared summaries and used them for the purpose of calculating the respective amounts of taxes claimed by the government to be due. The assessments were based thereon. Subsequently a state court ordered that plaintiffs' records be returned to them, but in the interim they had been destroyed by state officers. There is no contention that the federal government was in any manner involved or at fault in the destruction.

The plaintiffs recognize the burden of proof that is upon them with respect to their refund suits and to the counterclaims to establish that the respective assessments are wrong and to come forward with convincing evidence from which proper determinations of their respective tax obligations can be made. But each urges that he should be relieved from his burden because of the destruction of his records rendering it impossible, each says, to establish that the assessment against him is incorrect.

If that argument could ever have validity, it has none here. In each instance the seized records covered only a brief time span, and from that period the agent projected the average daily business carried on for the entire period in question, a method long held valid and not contested here. The best evidence with which each plaintiff could have refuted the projected business for the entire period would have been the daily records of actual wagers required by tax regulations to be kept. Neither plaintiff had kept such records. Therefore, neither is in position to complain that the limited records available to the federal government and used for its projections are unavailable.

■ Golden raises a second point relating to him only. He claims that a substantial part of the wagers reflected by his limited [and seized] records that were the basis for projecting his business and calculating his assessment, were not wagers actually placed by him but bets placed with others and with respect to which he was a mere conduit of information. Golden admits he was engaged in the gambling business but says that he wore two hats, one as bettor and one as a mere clerk, and that wagers reflected by his records were an admixture of bets placed with him and bets placed with others. The only evidence tending to show that the records contained the alleged admixture was Golden's own testimony. With respect to the capacity in which Golden dealt with wagers revealed by his records (just as with amounts), the burden is upon taxpayer to show incorrectness and to come forward with evidence supporting a correct determination. His oral testimony that some of the bets shown on his bet slips and other papers are not his is insufficient to meet that burden.

In each case, the judgment for the United States is affirmed.