## C.M. and Lola COLEMAN, Plaintiffs-Appellants,

v.

## UNITED STATES of America, Defendant-Appellee.

### No. 82–5036.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1983.

Decided April 11, 1983.

Rehearing Denied July 25, 1983.

R. Thomas Blackburn, Jr. (argued), Ewen, Mackenzie & Peden, Louisville, Ky., for plaintiffs-appellants.

Joseph L. Famularo, U.S. Atty., Lexington, Ky., Robert L. Gordon, Atty., Tax Div., U.S. Dept. of Justice, Michael Paup, Glenn L. Archer, Jr. [lead counsel], Phillip I. Brennan (argued), Washington, D.C., for defendant-appellee.

Before ENGEL and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This is an appeal by C.M. and Lola Coleman (Colemans) as taxpayers from a decision entered in the Eastern District of Kentucky which held that the Colemans had failed to meet their burden of proving that they were entitled to a refund of approximately $20,000 in additional assessments made against their 1963 and 1964 income taxes. This appeal joins the issue of assigning the burden for establishing the amount of tax due when, for the most part, neither the government nor the party in interest, in this case the Colemans, possess the source records for the years at issue.

The facts are largely a matter of stipulation. Briefly summarized, the Colemans filed their 1963 and 1964 income tax returns late, tendering final payment for the tax due, as computed by the taxpayers, on April 26, 1967. At some subsequent date in 1967, at the direction of the IRS, Coleman delivered his financial records to an IRS office in Pikeville, Kentucky. The IRS examined the records and, by certified mail, noticed the Colemans of a deficiency on July 25, 1967. The letter, addressed to the last known address for the Colemans, was returned as unclaimed. Accordingly, on December 15, 1967, the IRS assessed deficiencies against the Colemans.

The taxpayers sought to determine the basis for the assessment, first at Pikeville and then at a conference with the IRS District Director in Louisville. The Colemans asserted at trial that the District Director admitted at the meeting that he could not locate the financial records delivered by the Colemans in 1967, nor explain the assessment, but solicited the taxpayers to submit an offer in compromise. It was stipulated that the solicited offer was submitted on January 9, 1971 and rejected by the IRS on August 7, 1972.

In early 1976, the IRS initiated proceedings to foreclose its lien against the Colemans' home. Under this pressure, the taxpayers secured a mortgage loan and, by May 26, 1976, paid the assessments, utilizing, in addition to the loan, certain refund credits due from tax payments in 1965, 1968, and 1972–75. A refund claim was filed on July 1, 1976. In 1977, the taxpayers' retained financial records were destroyed in a flood. It is conceded by the government that "several years prior thereto", it "routinely" destroyed "the plaintiffs' tax returns for 1963 and 1964 [and] any reports, work papers and other documents."

The refund claim was denied and the instant suit ensued on September 28, 1977. At trial, the Colemans argued that an assessment is not entitled to its usual presumption of correctness when, as here, the IRS had absolutely no financial or other factual calculations to support the assessment. Alternatively, the taxpayers contended that they had carried any burden of proof by affirming the accuracy of their income tax returns as originally filed. The government argued that a suit for a refund is a *de novo* proceeding wherein the burden is upon the taxpayer to prove that the assessments were in error by material evidence from which a correct determination could be calculated. The trial judge found for the IRS and granted the government's motion to dismiss the claim for a refund "on the ground that upon the facts and the law the plaintiff has shown no right to relief." Fed.R.Civ.P. 41(b). This timely appeal ensued.

The sole issue is whether the assessment herein was entitled to its usual presumption of correctness.

Both parties agree that the central, indeed controlling, authority for this case is the Supreme Court's opinion in *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). In that case, the offices of a bookmaker in Los Angeles, Max Janis, were raided by police pursuant to a search warrant, and various "wagering records" were seized, which were delivered to the IRS. "Based exclusively upon its examination of the evidence so obtained by the Los Angeles police", the IRS assessed Janis for unpaid wagering taxes, and levied upon $4,940 in cash which had been confiscated in the raid. 428 U.S. at 436–37, 96 S.Ct. at 3023–3024.

Janis, defending against a state charge of gambling, moved to quash the search warrant asserting that it was conclusory. The trial judge agreed, quashed the warrant, and ordered the seized property, except for the cash levied upon by the IRS, to be returned. Id. at 437–38, 96 S.Ct. at 3024. Janis thereupon commenced proceedings in federal court for a refund of the money. It was stipulated that "the sole basis of the computation of the civil tax assessment [was] * * * the items obtained pursuant to the search warrant." *Id.* The district judge found that illegal evidence could not support an assessment and ordered a refund.

The Supreme Court, speaking through Justice Blackmun, initially stated the general rule:

> In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover. *Lewis v. Reynolds,* 284 U.S. 281 [52 S.Ct. 145, 76 L.Ed. 293] (1932). It is not enough for him to demonstrate that the assessment of the tax for which refund is sought was erroneous in some respects.

428 U.S. at 440, 96 S.Ct. at 3025. Subsequent to applying this conclusion to a contemporaneous government counter-claim, the Court concluded:

> In any event, for purposes of this case, we assume that * * * the burden of proof may be said technically to rest with respondent Janis.

*Id.* at 441, 96 S.Ct. at 3025–3026.

At this juncture the Court addressed the issue of the burden of proof placed upon Janis in this language:

> Respondent, however, submitted no evidence tending either to demonstrate that the assessment was incorrect or to show the correct amount of wagering tax liability, if any, on his part. In the usual situation one might well argue, as the Government does, that the District Court then could not properly grant judgment for the respondent on either aspect of the suit. But the present case may well not be the usual situation. What we have is a "naked" assessment without *any* foundation whatsoever if what was seized by the Los Angeles police cannot be used in the formulation of the assessment. The determination of tax due then may be one "without rational foundation and excessive," and not properly subject to the usual rule with respect to the burden of proof in tax cases. *Helvering v. Taylor,* 293 U.S. 507, 514–515 [55 S.Ct. 287, 290–291, 79 L.Ed. 623] (1935) See 9 J. Mertens, Law of Federal Income Taxation § 50.65 (1971).
>
> \* \* \* \* \* \*
>
> *Certainly, proof that an assessment is utterly without foundation is proof that*

*it is arbitrary and erroneous.* For purposes of this case, we need not go so far as to accept the Government's argument that the exclusion of the evidence in issue here is insufficient to require judgment for the respondent or even to shift the burden to the Government. We are willing to assume that if the District Court was correct in ruling that the evidence seized by the Los Angeles police may not be used in formulating the assessment (on which both the levy and the counterclaim were based), then the District Court was also correct in granting judgment for Janis in both aspects of the present suit.

428 U.S. at 441–443, 96 S.Ct. at 3026 (emphasis added).

In sum, the precise holding of *Janis* does not create an "exception" to the usual burden upon the taxpayer; rather, it teaches that the burden is met when the assessment is shown to be more than merely erroneous; that is, an assessment is *per se* arbitrary and unenforceable when it is established that it is "naked" and "utterly without [evidentiary] foundation." [1]

The trial court in the case at bar analyzed *Janis* as follows:

> The court does not find the plaintiffs' reliance on *Janis* well-placed. The defendant has submitted that *Janis* did not change the rule concerning the initial burden of proof. The Court agrees. The Supreme Court expressly reaffirmed the traditional burden of proof rule in refund suits in *Janis:*
>
> > In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover. *Lewis v. Reynolds,* 284 U.S. 281 [52 S.Ct. 145, 76 L.Ed. 293] (1932). It is not enough for him to demonstrate that the assessment of the tax for which refund is sought was erroneous in some respects.
>
> 428 U.S. at 440 [96 S.Ct. at 3025].
>
> In *Janis,* the taxpayer had specific evidence with which to meet his burden of proving the lack of foundation of the assessment; e.g., that the search warrant

---

1. *Janis* went on to consider the scope of the exclusionary rule where illegal evidence obtained by one sovereign is utilized in a different proceeding by another sovereign.

upon which the assessment was based was constitutionally defective. The assessment in *Janis* was, in effect, not an assessment at all, since the very foundation upon which it was based was legally non-existent. Aside from their affidavit and Mr. Fink's memorandum, the plaintiffs in the present case have submitted no specific evidence that show the assessments are without foundation.

In essence, the district judge sought to distinguish *Janis* as a case wherein "the taxpayer had specific evidence" of the absence of a proper foundation for the assessment, whereas the Colemans have no evidence. This reasoning ignores two points. First, Janis knew what evidence to adduce because the government had clearly stated the putative foundation for its assessment, *i.e.,* the seized records. Second, and more important, it is *already* a matter of stipulated fact in the case at bar that the assessments here in issue were not based upon *any* evidentiary foundation. The "specific evidence" demonstrating a total absence of an evidentiary basis for the imposed assessment here in issue is the government's explicit admission that it possessed no evidence whatsoever to support its conclusions. It is difficult to conceive more direct evidence of a "naked assessment without *any* foundation whatsoever" than the government's own concessions that it is without "any reports, work papers and other documents" to support its conclusions. (Emphasis added). Accordingly, the Colemans have here satisfied their burden of proving that the assessment is arbitrary and so cannot be enforced. *Accord, Weimerskirch v. C.I.R.,* 596 F.2d 358, 360–62 (9th Cir.1979); *Carson v. United States,* 560 F.2d 693, 696–97 (5th Cir.1977).

It should be noted that reversing the district court here does not strip the IRS of the ability to collect taxes in the absence of original records. It has long been held that the Commissioner may estimate assessments by "any reasonable method", and such estimates will be accorded the full presumption of correctness, subject to being overturned only upon proof by the taxpayer that he is entitled to a specific refund. *See DeLorenzo v. United States,* 555 F.2d 27 (2d Cir.1977). The practical effect of this authority is illustrated in *Heyman v. United States,* 497 F.2d 121 (5th Cir.1974), wherein the IRS prepared summaries of gambling records seized by Florida police and then utilized the summaries to project the gambling activity which was documented within a brief time over the entire year during which it was proved that gambling had occurred. The underlying records were subsequently destroyed by state officials. In a refund suit, each taxpayer sought to be relieved from his burden of proof "because of the destruction of his records rendering it impossible, each says, to establish that the assessment against him is incorrect." 497 F.2d at 122. The Court, however, specifically upheld the Commissioner's summaries and projections. Had such "secondhand" records been available in the matter *sub judice,* or any demonstrably reasonable methodology of estimation, it is likely that even the destruction of the Colemans' original returns would not have precluded reliance upon the assessment's presumption of correctness.

Wherefore, the holding of the district court is REVERSED, and the instant matter is REMANDED for further proceedings consistent with this opinion.