**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Walter H. SCHROEDER, Josephine J.
Schroeder, and Louis Brodnan,
Defendants–Appellees.**

**No. 89–1240.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1990.

Decided April 27, 1990.

Richard M. Prendergast, Dept. of Justice, Tax Div., Washington, D.C., Eileen M. Marutzky, Asst. U.S. Atty., Chicago, Ill., Gary R. Allen, Ann Belanger Durney, David M. Moore, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for plaintiff-appellant.

Lowell Komie, Michele Reilly, Arnold H. Landis, Chicago, Ill., John D. Kightlinger, Robert F. Meersman, Kathleen T. Meersman, Meersman & Meersman, Mount Prospect, Ill., for defendants-appellees.

Before WOOD, Jr. and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Arlington Plating Company, Inc. ("APC") withheld $131,428.72 in personal income and social security taxes from its employees' wages but it did not remit these "trust-fund" taxes as required to the United States. APC's officers, among whom were included Walter Schroeder and Louis Brodnan, chose instead to give the money to APC's creditors in an attempt to prevent the corporation's insolvency. The attempt failed. APC entered bankruptcy on July 16, 1976.

After the misappropriation of the trust fund taxes APC, and later the trustee in bankruptcy ("TIB"), made various payments to the United States in an attempt to settle APC's liability. This liability consisted, among other things, of amounts due for the errant trust fund taxes and amounts due for "non-trust fund" taxes, which included corporate income taxes and employer's social security tax. In June of 1976 APC paid the United States $11,446.82. The United States, through the Internal Revenue Service, allocated $11,267.04 of this amount to satisfy APC's non-trust fund tax liability. The remaining portion, $179.78, was used to reduce APC's liability for trust-fund taxes from $131,428.72 to $131,248.94. This allocation was made according to the IRS's standard policy, in which involuntary or undesignated corporate payments are allocated to satisfy non-trust fund tax liabilities first, trust fund tax liabilities second. In September of 1978 the TIB paid the United States $30,-000. Of this, $23,651.81 was allocated by the IRS towards satisfaction of non-trust fund tax liabilities (amounts of which arose anew over time). The remaining amount of $6348.19 was applied towards partial satisfaction of the corporation's trust fund tax liability, reducing the principal amount of this liability to $124,900.75. Once again, the IRS followed standard policy in apportioning the payment.

On February 25, 1980 the IRS assessed Schroeder and Brodnan with a penalty based on APC's unsatisfied trust fund tax liability. The IRS did so pursuant to I.R.C. § 6672, which makes those responsible for

a business's failure to pay trust fund taxes liable for a penalty that equals 100% of the amount not properly paid. 26 U.S.C. § 6672. *See also Garsky v. United States*, 600 F.2d 86, 89 (7th Cir.1979). Section 6672, in effect, gives the United States the ability to collect wayward trust fund taxes not only from an erring business, but also from those individuals responsible for guarding against such an error. *See, e.g., Purdy Co. of Ill. v. United States*, 814 F.2d 1183, 1186 (7th Cir.1987); *Monday v. United States*, 421 F.2d 1210, 1218 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). It "casts the net of liability over 'any person required to collect, truthfully account for, and pay over' withholding taxes—any 'responsible person' in tax jargon." *Wright v. United States*, 809 F.2d 425, 427 (7th Cir.1987). There is no question here that Schroeder and Brodnan were responsible for APC's willing failure to pay its trust fund taxes and, consequently, that they were liable under § 6672. Thus, the IRS could pursue for satisfaction of the trust fund tax liability not only APC, but Schroeder and Brodnan as well.

When the IRS assessed Schroeder and Brodnan it made a mistake. The assessment against these individuals was for $131,248.94. At the time it was made, however, APC's trust fund tax liability was only $124,900.75. In light of IRS policy to collect delinquent trust fund taxes only once,[1] the assessment should have been for $124,900.75 instead of for $131,248.94. In making the assessment the IRS apparently overlooked the $6348.19 previously allocated in September 1978 towards satisfaction of APC's trust fund tax liability.

After the assessment, more money related to APC's tax liabilities reached the IRS. On March 14, 1984 the TIB sent a check for $96,537.03. As before, the IRS first allocated these funds to satisfy APC's outstanding non-trust fund tax liability. The amount was small, however, only $2370.58. The remaining amount of $94,166.45 was allocated to reduce the trust fund tax liability. The TIB sent the IRS another check on March 22, 1984. The entire amount of $6730 was allocated by the IRS towards satisfaction of APC's current non-trust fund tax liability. The § 6672 individuals also sent some money. Throughout the time period of 1980–85, the IRS received payments from them totalling $22,031.59. All of this, of course, went towards reducing their § 6672 liability.

By 1985, the IRS had received trust fund allocated payments from the TIB and the § 6672 individuals that substantially reduced the principal balance owed to the United States: from the 1980 assessed amount of $131,248.94 to a current amount

---

1. Because the § 6672 penalty is essential a collection device, *see, e.g., Monday, supra,* at 1216, the IRS will not attempt to collect from a § 6672 individual an amount of money greater than the business's outstanding trust fund tax liability. *See* Policies of the Internal Revenue Service, Policy Statement P–5–60, *reprinted in* 1 Internal Revenue Manual (CCH) 1305–15. *See also United States v. Sotelo,* 436 U.S. 268, 279 n. 12, 98 S.Ct. 1795, 1802 n. 12, 56 L.Ed.2d 275 (1978); *United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1548 (11th Cir.1986). This is so even though the individual's liability under § 6672 is separate and distinct from a business's liability for trust fund taxes. *See Monday, supra,* at 1218; *Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921, 928 (3d Cir.1990).

Of course the IRS also will not attempt to lower unnecessarily the § 6672 individual's liability. As previously mentioned, it allocates all involuntary and undesignated corporate tax payments it receives first towards satisfaction of a corporation's non-trust fund tax liability. *See* Policy Statement 'P–5–60, *supra. See also* 2 Internal Revenue Manual (CCH) ¶ 56(18)3. This leaves a corporation's trust fund tax liability higher than it would otherwise be. Since the § 6672 individual's penalty liability is derived from the corporation's unsatisfied trust fund tax liability, the individual's penalty liability is also higher than it otherwise would be.

The IRS's policy attempts to maximize the collection of delinquent taxes. The IRS allocates undesignated corporate payments first to reduce a corporation's non-trust fund tax liability because it can only collect these amounts from the corporation. Once the corporation is out of business, the United States can kiss goodbye any non-trust fund taxes owed it but not paid. When a corporation goes out of business owing only trust fund taxes, however, the IRS still can collect from the § 6672 individuals and make the United States whole. Thus, IRS policy is to satisfy non-trust fund tax liabilities first. Undesignated corporate payments are allocated to satisfy trust fund tax liabilities only when non-trust fund tax liabilities are already extinguished.

of $15,050.90 ($8712.71 [2] if considering the $6348.19 allocated from the "forgotten" payment). Since the 1980 assessment, however, statutory interest had accrued on the § 6672 individuals' outstanding balances. The amount of that interest was well over $100,000. To recover this amount and the principal then due, the United States sued the § 6672 individuals. Most of them settled. Brodnan and Schroeder ("the defendants") did not.

Their case went to trial in June of 1988. The trial was bifurcated into jury and bench portions. The first portion was before a jury to determine if under 26 U.S.C. § 6672 the defendants were persons responsible for APC's willful failure to pay its trust fund tax liability. The jury found that they were. The second portion was to be a bench trial to determine the amount of the penalty owed the United States.

A pre-trial conference was held one week before the bench trial was scheduled to begin. At this conference the United States admitted, for the first time, that the assessment of February 25, 1980 upon which it was suing was in error because of the forgotten $30,000 payment. The district court was none too pleased with this development. Throughout the course of pre-trial discovery the defendants specifically and repeatedly asked the United States about the $30,000 payment, and the government specifically and repeatedly denied any knowledge of it. This information evasion was not isolated either. The United States had denied knowledge of the March 1984 TIB payments at one time, too, only belatedly acknowledging its receipt of that money. The sum total of these and other mishaps on the part of the government raised a question about the propriety of the government's litigation tactics.

At the pre-trial conference the United States stated its intention to seek from the defendants only a lower and correct principal amount of $8712.71, plus statutory accrued interest. When the bench trial began it put on various witnesses to establish that amount, one of whom was a former IRS special agent. The witness explained how the 1980 assessment was calculated, and how the corporate payments were allocated according to the IRS's policy. He conceded that the 1980 assessment had not accounted for the September, 1978 payment of $30,000. But he had revised calculations taking that payment into account, calculations showing the principal amount now owed by the defendants. The witness did not know how much interest they owed, however, as the interest calculation he had was based on old, erroneous figures. He could only guess that it was for an amount approximating $100,000. The defendants put on witnesses as well, including an "expert" accountant who believed that the IRS should have allocated APC's pre–1984 payments differently, based on a 75% trust fund/25% non-trust fund split. Assuming such a split, and various other things, the expert opined that the defendants owed the United States nothing, and, in fact, that they had overpaid. At the conclusion of the trial the defendants moved for dismissal of the action and for an award of attorney's fees under 26 U.S.C. § 7430. The court took these motions under advisement.

In a written memorandum and order entered December 8, 1988, the court entered judgment for the defendants. The court noted that although an IRS assessment generally is presumed valid, the presumption may be overcome by a showing "that the assessment is without rational foundation, or is arbitrary and erroneous" or by a showing that the assessment "was computed in an improper manner." It also noted that a supplemental assessment must be made within the limitations period for an original assessment. The court found that the assessment of February, 1980 was "incorrect"; that it should have been "abated by $6348.19 to reflect a credit given for the $30,000 payment in 1978." It also found that the IRS's allocation of APC's payments towards satisfaction of its non-trust fund and trust fund tax liabilities was arbitrary. It concluded from this that the Feb-

---

**2.** Under the figures mentioned so far, the amount should be $8702.71. Apparently a $10 fees and costs charge was levied against the

§ 6672 individuals in 1980 after the IRS had filed liens against their property. Thus, the total amount due and owing was $8712.71.

ruary, 1980 assessment was "arbitrary and erroneous" and "invalid," and that "the defendants are technically entitled to a new assessment." The court further concluded that the United States's "attempt ... to credit the defendants with a portion of the $30,000 payment made in 1978 constitutes an attempt to make a supplemental assessment." This supplemental assessment was inefficacious, however, because the limitations period for making an assessment against the defendants ended in April of 1980. Thus, the old assessment was invalid and the supplemental assessment was time-barred. Consequently, the defendants were entitled to judgment. Furthermore, the court opined, they were entitled to have their attorney's fees paid. The court found the government's litigation behavior inexcusable. It felt that the government had made egregious errors in judgment and action and that these errors were not "reasonable or substantially justified." An award of defendants' attorney's fees was appropriate because of this and because the defendants had "prevailed" in their action.

## I.

We disagree with the district court's judgment. Its conclusions pertaining to both the assessment and the attorney's fees are incorrect.

■ The question in this case concerns the effect of the government's concession on its assessment of the defendants' tax liability. In this circuit, as in others, "[i]t is axiomatic that ... the Commissioner's tax deficiency determinations are to be presumed correct." *Barnes v. Commissioner*, 408 F.2d 65, 68 (7th Cir.), *cert. denied*, 396 U.S. 836, 90 S.Ct. 94, 24 L.Ed.2d 86 (1969). This presumption, however, is rebuttable. It can be overcome. In a § 6672 case, the taxpayer bears both the burden of production and the burden of persuasion in showing that the presumption is unwarranted. *Ruth v. United States*, 823 F.2d 1091, 1093 (7th Cir.1987). To make such a showing the taxpayer must persuade the fact-finder that the government's assess-

ment is wrong, and wrong by some amount. *Id.*

■ In this case it is beyond dispute that the 1980 assessment of $131,248.94 was off by an amount of $6348.19, that it should have been for $124,900.75. The government conceded as much, the evidence proved it out, and the lower court so found. Thus, it is clear that the government's assessment was wrong, and wrong by $6348.19. This does not mean, however, that the defendants owe nothing. Proof that an assessment is incorrect does away with the government's presumption, it is true, but it does not wipe out the taxpayer's liability. *See Rogers v. Commissioner*, 248 F.2d 452 (7th Cir.1957) (concerning unreported income). That liability is merely adjusted to coincide with the proof. *Id. See also United States v. Rindskopf*, 105 U.S. 418, 422, 26 L.Ed. 1131 (1881). When a court is faced with an incorrect but otherwise valid assessment the proper course is not to void the assessment, as did the district court, but to determine what, if anything, the taxpayer owes the government. *See Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). This course should be followed whenever a taxpayer's liability is capable of being determined by some approved method of calculation, even when the original assessment was arbitrarily computed and excessive in amount. *See id.* Barring special circumstances, if the defendants' liability *can be* calculated and enforced it *should be* calculated and enforced.

Sometimes, however, the defendants' liability cannot be calculated at all because there is no evidence upon which such a calculation can be based. In these cases the correct argument is not that the amount assessed is incorrect. It is, instead, that the amount assessed has no rational foundation upon which to stand. *See United States v. Janis*, 428 U.S. 433, 441, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 (1976). Courts in this instance will "look behind an assessment to evaluate the procedure and evidence used in making the assessment." *Ruth, supra*, at 1094. The merits of the tax liability are not in issue;

it is the foundation of the assessment itself that concerns the court. *Id.* If the taxpayer shows that the assessment in issue is "a 'naked' assessment without *any* foundation whatsoever," *Janis, supra,* 428 U.S. at 441, 96 S.Ct. at 3026, then the assessment is "arbitrary and erroneous" and void, and the taxpayer owes nothing. *See id.*

■ The court apparently believed that this was a case like *Janis,* where the circumstances are such that the government's assessment is without effect. It is not. The United States's pre-trial confession that the 1980 assessment was too high does not make that assessment a *Janis* assessment, one without a rational foundation. Admittedly, the assessment was "excessive" in that it failed to account for the 1978 reduction of $6348.19 in APC's trust fund tax liability. But an assessment excessive in amount, without more, is not void under *Janis.* For the assessment to be void, it must be more than incorrect, for the correctness of the amount assessed is quite irrelevant. It must be arbitrary in the sense that the calculation has no support and the true amount of tax owed is incapable of being ascertained. Thus, where records supporting an assessment are excluded from evidence, *see Janis, supra,* or are nonexistent, *see Coleman v. United States,* 704 F.2d 326 (6th Cir.1983), so that the basis upon which an assessment is calculated is beyond the knowledge of the court, the assessment is "arbitrary and erroneous." It is beyond saving. Such an assessment, however, does not exist here. There are plenty of records, documents, and other "foundational" items upon which a correct determination of the defendants' liability may be made. Consequently, there was no need to void the assessment. There was at most a need to calculate the correct amount of tax due the government.

But perhaps we are too hasty in reaching this conclusion. The lower court seems to have raised another concern that relates, at first glance, to *Janis.* The court found that the IRS arbitrarily apportioned the payments it received from APC and the TIB. In so finding the court seems to have been swayed by the testimony of the defendants' expert, who pointed out that the IRS used a 75% trust fund tax/25% non-trust fund tax apportionment ratio on one payment but not on others. The court obviously believed that if the IRS used a 75%/25% ratio with one payment, it should use it for all payments.

■ The IRS, however, is not required to apportion the payments it receives in a symmetrical fashion. If the payments are involuntary or undesignated, as they were in this case, the IRS may apportion them as it sees fit. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983). Here the IRS saw fit to apportion the corporate payments it received in accordance with standard policy, first eliminating APC's non-trust fund tax liability and only then reducing APC's (and, derivatively, the defendants') trust fund tax liability. This policy has been previously blessed by a multitude of courts, including this one. *See id. See also Wood v. United States,* 808 F.2d 411, 416–17 (5th Cir.1987); *Emshwiller v. United States,* 565 F.2d 1042, 1046 (8th Cir.1977); *Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Datlof v. United States,* 370 F.2d 655, 688 (3d Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). It is so blessed today. That the policy led in one instance to a 75%/25% split is merely fortuitous; that instance created no "standard" for the IRS to maintain over time.[3]

3. Moreover, even if we were to agree with the district court that the IRS's apportionment was "arbitrary," we would still be precluded from holding the assessment of February 25, 1980 void. This is because all of the records from which a proper apportionment could be calculated are present. Thus, the base or foundation to determine rationally the correct amount of liability exists, leaving the assessment outside the scope of *Janis.* The proper course of action for the court in such an instance would be to reapportion the payments in a rational manner and then determine the amount of the defendants' liability. *See Helvering v. Taylor,* 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. It may be that upon a determination of the proper amount of tax due and owing on February 25, 1980 it is discovered that the defendants owe nothing to

## II.

This case is outside the scope of *Janis*. The 1980 assessment is not "arbitrary and erroneous." It was computed on a solid basis, albeit incorrectly, and the true amount of tax due is well within the comprehension of the court. Moreover, the apportionment policy used by the IRS is quite rational. There is no need, therefore, to void the assessment. In so doing the district court was in error.[4] Accordingly, we REVERSE the judgment of the district court relating to the defendants' liability. And because the court's judgment in favor of the defendants was the predicate for its award of the defendants' attorney's fees, we REVERSE its judgment with respect to the defendants' attorney's fees as well.

Upon realizing (from the government's concession) that the assessment sued upon by the United States was wrong, the court in this case should have sought to determine the correct amount of the defendants' liability. Starting with the new principal amount calculated by the government—$8712.71—the court should have determined whether the defendants were able to prove this amount erroneous, and if so, by what amount. Then the court should have calculated the amount of interest[5] accruing by operation of law on whatever amounts, if any, were outstanding over time since the date of the assessment, February 25,

1980. Summing the current principal and the accrued interest, the court should have entered judgment in that amount for the United States. Of course, it did not do so. Thus, we REMAND the case to the district court for further proceedings in accordance with this opinion.[6]

It is so ordered.

the IRS today. But that is not to say that the February 25, 1980 assessment is void under *Janis*.

**4.** There is one other issue that should be addressed. The district court was very concerned with the statute of limitations in this case. The defendants had argued that the United States's pre-trial concession voided the 1980 assessment and created a supplemental assessment pursuant to 26 U.S.C. § 6204 that was barred by the statute of limitations. The court was persuaded by the defendants. The government now has responded that its concession was not a supplemental assessment, but an abatement of the 1980 assessment pursuant to 26 U.S.C. § 6404.

We think this statute of limitations line of reasoning is a red herring, nothing more, and we decline to chase it. The record does not reflect the making of a supplemental assessment or the making of an abatement, in the pre-trial conference or otherwise. It only shows a concession on the part of the government that the

assessment was for an amount $6348.19 too high. The statute of limitations, § 6204, and § 6404, therefore, are irrelevant.

**5.** The court was somewhat distressed at trial when the government could not show how much interest was owed the United States. It seems to have felt that the government failed to "prove," in the evidentiary sense, how much was owed to it by the defendants. We sympathize with the court's anger over the government's lack of preparation. But we do not find the government's shortcoming too egregious here. Interest on the § 6672 penalty accrues by operation of statute. *See* 26 U.S.C. § 6601(e)(2). Thus, the amount owed is a matter of law, not of evidence. It is not something the government must prove at trial.

**6.** In addition to computing the amount of the defendants' liability, the court also should reach all other issues left unresolved below, such as the fraudulent conveyance issue raised by the government but not addressed in this appeal.