T.C. Memo. 2012-26

UNITED STATES TAX COURT

SUE AND PAUL COLVIN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5899-09.                    Filed January 30, 2012.

Joseph T. Bambrick, Jr., for petitioners.

Gary C. Barton and Elizabeth Downs, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  In two notices of deficiency dated
December 30, 2008, respondent determined the following
deficiencies with respect to petitioners' Federal income tax:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1993 | $11,015 | -0- |
| 1998 | 117,903 | $23,580.60 |
| 1999 | 348,079 | 69,615.80 |

In another notice of deficiency also dated December 30, 2008, respondent determined the following deficiencies with respect to petitioner Sue Colvin's (Ms. Colvin) Federal income tax:

| Year | Deficiency |
|------|-----------|
| 1994 | $135,389 |
| 1995 | 115,201 |
| 1996 | 88,015 |

The disputed amounts[1] relate to Ms. Colvin's sole proprietorship Sioux Transportation (Sioux).  After concessions, the issues for decision are:

---

[1]Petitioners do not assign error to all of respondent's determinations in the notices of deficiency.  We deem any issue not raised in the assignments of error in the petition conceded.  See Rule 34(b)(4), Tax Court Rules of Practice and Procedure.  In addition, petitioners concede $55,924 of the adjustment to gross receipts reported on the 1993 Schedule C, Profit or Loss From Business, and respondent concedes the remaining $265,000 of that adjustment.  Accordingly, the parties resolved all issues with respect to 1993.  Respondent concedes that the adjustment to capital gain for 1999 should be ($20,122).  All remaining adjustments for all years at issue are computational.  In the petition, petitioners challenge interest on the deficiencies, but by separate order entered sua sponte we shall dismiss that part of petitioners' case challenging interest, for lack of jurisdiction.  See sec. 6601(e)(1), which provides that interest is excluded from the definition of "tax" for purposes of sec. 6211(a).  See White v. Commissioner, 95 T.C. 209, 213 (1990).

(1) Whether Ms. Colvin is entitled to the deduction for other expenses reported on her 1997 Schedule C,[2] Profit or Loss From Business, and whether petitioners are entitled to the deductions for other expenses reported on the 1998-99 Schedules C;

(2) whether Ms. Colvin is entitled to decrease the Schedule C gross receipts for 1997 by $97,497, and whether petitioners are entitled to decrease the Schedule C gross receipts for 1999 by $532,741;

(3) whether petitioners are entitled to an additional depreciation deduction of $55,648 for 1999; and

(4) whether petitioners are liable for the section 6662(a) penalty for 1998 and 1999.[3]

## FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate in our findings by this reference. Petitioners resided in Arkansas when they filed their petition. Petitioners were married during the years at issue and filed joint Federal income tax returns for 1993 and 1998-99. Ms. Colvin filed her

---

[2]Respondent did not issue a notice of deficiency for 1997. However, in order to decide the issues raised by Ms. Colvin with respect to 1994, we must also decide whether she is entitled to a net operating loss carryback from 1997 in computing her 1994 tax liability. See sec. 6214(b).

[3]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

1994-97 Federal income tax returns with the filing status of married filing separately. Petitioners were divorced at the time of trial.[4]

During the years at issue Ms. Colvin operated Sioux, an interstate trucking company based in Springdale, Arkansas. In 1999 Ms. Colvin also operated STI, Inc., a C corporation, which was a trucking company also operating out of Springdale, Arkansas. Sioux received revenue from hauling loads. In 1999 Sioux also received revenue from leasing trucks to STI, Inc.

Sioux had two types of arrangements with truck drivers. In some years Sioux leased trucks from owner-operators, but in later years Sioux owned trucks. In some years, such as 1995, both arrangements were in place. Sioux paid drivers per diem for their expenses, including meals, motels, and other expenses. Sioux calculated per diem amounts on the basis of the number of travel days. Those amounts were recorded in payroll books that indicated travel dates but not destinations.

Besides the payroll books, Sioux had the following records system. Each load received a trip number that was listed in a load book. The drivers brought bills of lading to the office.

---

[4]Only Ms. Colvin was present at trial. Under the divorce settlement, Ms. Colvin is responsible for the deficiencies. Petitioner Paul Colvin was aware of the proceeding and chose not to participate.

When customers paid their bills, a Sioux employee posted the payment in the load book.

Sioux operated on the cash basis method of accounting. Wilson & Jackson, an accounting firm, prepared the 1993-94 returns. Until 1998 Sioux did not have a bookkeeper, so Ms. Colvin totaled Sioux's gross receipts and expenses and delivered the information, along with Sioux's checkbooks, to the return preparer.

Starting with the 1995 return, Rita Wilks (Ms. Wilks) prepared Ms. Colvin's and petitioners' Federal income tax returns from information Ms. Colvin furnished. For the 1995-96 returns, Ms. Colvin totaled all the business checks that she had written and that had cleared the bank and gave Ms. Wilks the totals. She also provided Ms. Wilks a list of all expenses by category and a statement of the total revenue. For the depreciation schedule, Ms. Colvin provided an equipment list.

Sometime in 1998, but before the preparation of the 1997 return, Ms. Wilks became an outside bookkeeper for Sioux. She used checkstubs, deposit books, bank statements, payroll books, and payroll reports to prepare the general ledger and profit and loss statements for 1997-99. She then used the bookkeeping records to prepare the 1997-99 returns.

Procedural Background

On a date that does not appear in the record the Internal Revenue Service (IRS) commenced an audit of petitioners' and Ms. Colvin's 1993-96 returns. In December 2000 Ms. Colvin retained Bruce Loch (Mr. Loch), who represented petitioners throughout the audit. Mr. Loch reviewed cash receipts and disbursement records, general ledgers, trip reports, payroll, and other related items pertaining to 1993-96 and prepared a report. Subsequently, the IRS extended the audit to include 1997-99. Mr. Loch reviewed the records related to 1997-99 and participated in the audit with respect to those years. After respondent issued the notices of deficiency, Mr. Loch reviewed them and prepared a summary report of his findings. Petitioners filed a timely petition with this Court.

After the case was calendared for trial, petitioners mailed to the Court a letter requesting us to accept an expert report prepared by Mr. Loch. The proffered report purports to summarize Mr. Loch's findings on the basis of his review of the notices of deficiency. In his report Mr. Loch reviews examination changes proposed at various stages of the audit and describes developments during the Appeals process. For every year at issue he opines "within a reasonable degree of accounting certainty" on whether specific adjustments in the notice of deficiency were

appropriate and on what the income tax changes and tax liabilities should be.

Respondent filed a motion in limine seeking to exclude Mr. Loch's report and testimony. Respondent contended that the report did not comply with Rule 143(g), improperly addressed legal arguments and advocated for petitioners, and was not helpful to the Court. Respondent also objected to the report because it addressed matters before the issuance of the notice of deficiency. Petitioners filed an opposing motion to strike.

During the calendar call we held a hearing on the motions. We granted respondent's motion for the reasons stated therein and denied petitioners' motion. We did not admit Mr. Loch's report into evidence as an expert report and did not permit Mr. Loch to testify as an expert witness.

Before trial the parties submitted to the Court a stipulation of facts accompanied by 15 joint exhibits, which included the notices of deficiency; a Form 5278, Statement-- Income Tax Changes, for 1997; petitioners' Federal income tax returns for 1993-99; Sioux's general ledgers for 1997 and 1999; and a Form 1120, U.S. Corporation Income Tax Return, for 1999 and the general ledger for 1999 of STI, Inc. Petitioners did not identify which entries in Sioux's general ledgers pertained to Sioux's deductions for 1997 and 1999 and introduced no credible evidence to substantiate Sioux's deductions claimed on their

returns that respondent disallows. Instead, petitioners called Mr. Loch to testify as a fact witness, which we allowed. Petitioners' counsel Joseph T. Bambrick, Jr. (Mr. Bambrick), insisted that Mr. Loch had participated in the audit, which in his view was not different from preparing a return, and had reviewed Sioux's business records.

Mr. Loch testified that he became involved in this case in December 2000 when Ms. Colvin retained him to review the revenue agent's report and that he reviewed the revenue agent's report for 1993-96 and Sioux's books and records for 1993-99. Respondent objected on the ground of relevancy, and we sustained the objections. We explained to Mr. Bambrick, among other things, that Mr. Loch's testimony does not prove whether respondent's adjustments were incorrect because Mr. Loch had no firsthand knowledge regarding the relevant facts. Petitioners' counsel then stated that the records had been destroyed as a result of a flood.

We permitted Mr. Loch to proceed with his testimony but explained to petitioners' counsel that Mr. Loch's testimony to the extent it attempted to substitute for business records was not helpful to the Court. We then permitted petitioners' counsel to proffer additional testimony of Mr. Loch. Mr. Bambrick's proffer of Mr. Loch's testimony revealed that the testimony would show a transpositional error by the auditor and its effect on

other years and would address "supporting documents and the basis for the various objections that the Service has", and "pure accounting items." Mr. Loch, however, then stated that the transpositional error had been corrected in the notices of deficiency that were before the Court. Petitioners again attempted to introduce Mr. Loch's report into evidence as an expert report or as a factual report. Consistent with the ruling regarding the motion in limine, we did not admit the report in evidence. We explained to petitioners' counsel that identifying accounting issues in the notices of deficiency, as opposed to presenting credible evidence of the deductions that petitioners claimed, is not helpful to the Court.

OPINION

I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer generally bears the burden of showing they are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). This includes the burden of substantiation. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), (e), Income Tax Regs.

Pursuant to section 7491(a)(1), the burden of proof as to factual matters may shift from the taxpayer to the Commissioner under certain circumstances. The record does not allow us to conclude that petitioners met the requirements for shifting the burden of proof under section 7491(a)(2).

Petitioners argue that the notices of deficiency are not entitled to the presumption of correctness and respondent bears the burden of proof because respondent's determinations are "without rational foundation and excessive". However, the cases petitioners cite, such as United States v. Janis, 428 U.S. 433 (1976), Dellacroce v. Commissioner, 83 T.C. 269 (1984), and others are distinguishable because, unlike the case at hand, they involved determinations of unreported income.

Petitioners also cite Coleman v. United States, 704 F.2d 326 (6th Cir. 1983), a refund case, in which the Court of Appeals for the Sixth Circuit agreed with the taxpayers that the tax assessment at issue was not entitled to the presumption of correctness when neither the Government nor the taxpayer had records to support the calculations. Coleman is also distinguishable. Unlike this case, in Coleman v. Commissioner, supra at 329, the Government stipulated that the assessments had no evidentiary foundation. Respondent has not conceded that his determinations have no evidentiary foundation. In fact,

respondent asserts that his determinations are supported by the evidence and are correct.

We conclude that the notices of deficiency are entitled to the presumption of correctness and petitioners bear the burden of proof.[5]

II. Procedural Matters

A.  Mr. Loch's Report and Testimony

In their posttrial briefs, petitioners contend that the Court erred by refusing to allow Mr. Loch to testify as an expert witness or as a fact witness regarding errors in the notices of deficiency.[6]  Petitioners contend that Mr. Loch negotiated with the revenue agent and the Appeals employee and was thoroughly familiar with the facts.  According to petitioners, the Court should have allowed Mr. Loch to testify as an expert witness because the case involves technical subjects, such as a net operating loss carryover.

---

[5]Petitioners contend in their posttrial brief that respondent presented no admissible evidence to call into question petitioners' records "to support the alleged deficiency". However, because the notices of deficiency are entitled to the presumption of correctness and because petitioners bear the burden of proof, respondent does not need to present such evidence.

[6]Contrary to petitioners' assertion, we allowed Mr. Loch to testify as a fact witness to the extent he had any firsthand knowledge of information relevant to this case.  Mr. Loch's testimony was not helpful because he was not Sioux's bookkeeper or the return preparer for the years at issue.

Generally, under rule 702 of the Federal Rules of Evidence, expert testimony is admissible if it assists the Court to understand the evidence or to determine a fact in issue. See Sunoco, Inc. & Subs. v. Commissioner, 118 T.C. 181, 183 (2002). Mr. Loch's opinion about whether respondent's adjustments in the notices of deficiency are proper does not "assist the trier of fact to understand the evidence or to determine a fact in issue". See Fed. R. Evid. 702. Mr. Loch's report stated petitioners' litigation position, summarized concessions and the remaining contested items, and set forth his opinion as to whether the contested adjustments are proper. In short, Mr. Loch's expert report attempted to tell the Court how to decide the issues, was not helpful, and was irrelevant. As we observed in Boltar, L.L.C. v. Commissioner, 136 T.C. 326, 335 (2011): "we may fairly reject the burden on the parties and on the Court created by unreasonable, unreliable, and irrelevant expert testimony."

B.  Petitioners' Hearsay Objections

Before trial the parties submitted to the Court a stipulation of facts accompanied by 15 joint exhibits, including the notices of deficiency. Neither party reserved any objection to any of the stipulations or to the attached joint exhibits.

At the commencement of trial petitioners' counsel objected to the notices of deficiency as hearsay. He stated that because the IRS employee who had prepared them was not available for

cross-examination, the notices of deficiency were inadmissible as hearsay.  We overruled petitioners' objection, explaining that petitioners failed to reserve it in the stipulation of facts. In the posttrial briefs petitioners contend that we erred when we admitted the 15 exhibits, because they were hearsay.  Petitioners allege they were denied their due process rights when they were not permitted to cross-examine the IRS employee who prepared the notices of deficiency as to how the notices of deficiency were prepared.

Rule 91(d) provides that "Any objection to all or any part of a stipulation should be noted in the stipulation, but the Court will consider any objection to a stipulated matter made at the commencement of the trial or for good cause shown made during the trial."  In addition, stipulations, like contracts, bind parties to the terms actually agreed upon.  Rule 91(e); Stamos v. Commissioner, 87 T.C. 1451, 1454 (1986).  The interpretation of a stipulation is determined primarily by ascertaining the intent of the parties, and we construe the language of a stipulation pursuant to rules applicable to the construction of contracts. Stamos v. Commissioner, supra at 1455.

The preamble of the stipulation of facts states that the parties have the right to object to the admission of any facts and exhibits in evidence on the grounds of relevancy and

materiality.[7]  The preamble also states that either party has the right to object on other grounds, but only if the objection was expressly reserved in the stipulations.  Neither the preamble nor any of the stipulation paragraphs contain any objections by either party to any of the exhibits.  Petitioners have offered no compelling reason why we should not enforce the terms of the preamble to which the parties agreed.  Accordingly, petitioners' objections to the admission of the joint exhibits are untimely, and we reject petitioners' argument.

III. The Adjustments at Issue

A.   Schedule C Other Expenses

1.   1997 Schedule C Other Expenses

For 1997 respondent disallowed deductions for $12,409 of Schedule C other expenses.  The explanation attached to the Form 5278 shows that respondent calculated this amount on the basis of the analysis of Sioux's business checking accounts and the cash

---

[7]The preamble states:

It is hereby stipulated that, for the purpose of this case, the following statements may be accepted as facts and all exhibits referred to herein and attached hereto may be accepted as authentic and are incorporated in this stipulation and made a part hereof; provided, however, that either party has the right to object to the admission of any such facts and exhibits in evidence on the grounds of relevancy and materiality, but not on other grounds unless expressly reserved herein, and provided, further, that either party may introduce other and further evidence not inconsistent with the facts herein stipulated.

expenses reported. Petitioners contend that in that analysis respondent improperly disallowed a meals and entertainment expense deduction of $70,425. However, respondent subtracts $70,425 as the nondeductible portion of the meals and entertainment expense, as his methodology requires. Respondent's methodology in fact is consistent with the 1997 Schedule C on which Ms. Colvin also reported $70,425 as the nondeductible portion of the meals and entertainment expense. See sec. 274(n). Neither party explains what specific expense disallowance resulted in the $12,409 adjustment. Because petitioners bear the burden of proof and they failed to convince us that respondent's determination is incorrect, we sustain respondent's determination.

### 2. 1998 and 1999 Schedule C Other Expenses

On the 1998 and 1999 Schedules C petitioners reported other expenses of $2,692,486 and $2,423,943, respectively. Ms. Wilks explained at trial that under the "other expenses" category Sioux reported per diem expenses paid to drivers. Ms. Wilks calculated the amounts by totaling per diem amounts in the payroll book. The per diem amounts reimbursed the truck drivers for meals, motels, and other expenses while away from home. In the notice of deficiency respondent disallowed $88,548 and $872,318 of those expenses for 1998 and 1999, respectively.

Generally, section 162(a) allows a taxpayer to deduct ordinary and necessary expenses of carrying on the taxpayer's trade or business. Section 274(n)(3)(B) limits the amount allowable as a deduction under section 162 for any expense for food, beverages, or entertainment to 55 percent of the amount of the expense that otherwise would be allowable as a deduction.[8] The taxpayer must maintain sufficient records to substantiate the deduction. See sec. 6001; Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989). It is petitioners' failure to substantiate the disallowed portion of the per diem expenses that is at issue.

Mr. Bambrick stated at trial that "if you want all of those records, we certainly will furnish them here, in Washington or someplace else, but what I'm saying to you is, there's going to be literally a hundred thousand records that we may have to bring in." Mr. Bambrick later reiterated that if petitioners brought in documents, they would be in barrels, and reviewing every truck trip and expense would take weeks. He stated that he was ready to produce those documents at a location convenient to the Court. However, Mr. Bambrick then claimed that the records had been destroyed in a flood. Respondent's counsel contends that

---

[8]The return explains this expense as "Travel Allowance x 55%". We assume this means that petitioners deducted the per diem expenses subject to the limitation of sec. 274(n)(3).

petitioners had nearly 6 years to raise the issue of the destroyed records and to attempt to reconstruct any damaged records.

Ms. Colvin then testified that someone had broken into the storage building where she kept records for approximately 1990-2000 and tore copper lines out of the walls, causing flooding.[9] According to Ms. Colvin, no one realized there was a flood for several months. The records were stored in boxes that became soaked, and the records had to be scooped up off the floor. Approximately 2 months before the trial Ms. Colvin cleaned out the building, at which point the documents were unreadable. Ms. Colvin testified that no other documents are available. Mr. Bambrick claims that Mr. Loch had reviewed those records and used them for his report.

After trial and as directed by the Court, respondent's counsel provided petitioners with respondent's workpapers to assist the parties in supplementing the record if the parties could agree on additional stipulations. The parties did not agree on the admissibility of the workpapers, nor did they offer

---

[9]After trial petitioners submitted to respondent's counsel and the Court (1) a letter dated Feb. 23, 2010, from Omni Plumbing, Inc., indicating that on May 22, 2004, Ms. Colvin requested an emergency service call because of the water in the building and (2) a receipt from Omni Plumbing. However, the parties did not stipulate that the documents were admissible as evidence. We note that the documents petitioners proffered indicate that the water problem occurred on or before May 22, 2004.

any additional stipulated facts or documents.  In the absence of a stipulation, respondent now contends that a substantial portion of respondent's workpapers is irrelevant because by examining them we would "look behind the notice of deficiency."  We agree. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974).  Some of the documents appear to be copies of various documents that petitioners submitted to the revenue agent during audit.  Petitioners did not identify any relevant portions of the documents or workpapers and did not move to reopen the record. The joint status report describes petitioners' position as follows:  "The following pages of * * * [the documents] contain relevant factual information to either support and/or not support the statements made by and/or on behalf of the Tax Payer [sic] and/or the Service".  Consequently, we limit our review to the record and do not consider unstipulated documents submitted by either party after trial ended.  Petitioners properly bear the burden of proof.  See Rule 142(a).

    Generally, section 274(d) provides that no deduction is allowable for traveling expenses (including meals and lodging while away from home), unless the deduction is substantiated in accordance with the strict substantiation requirements of section 274(d) and the regulations promulgated thereunder.  Section 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985), provides that when a taxpayer's records have been

destroyed or lost due to circumstances beyond his control, he is generally allowed to substantiate his deductions by reasonable reconstruction of his expenditures. A taxpayer is required to try to salvage or reconstruct what he can. See, e.g., <u>Chong v. Commissioner</u>, T.C. Memo. 2007-12. If the taxpayer establishes that the records were destroyed, he must nevertheless substantiate each element of each expenditure under section 274. See <u>Boyd v. Commissioner</u>, 122 T.C. 305, 320-321 (2004).

Petitioners argue that they presented uncontradicted evidence as to how their records were prepared and maintained and how the tax returns were filed. We disagree. The oral testimony presented at trial addressed the paperflow and recordkeeping in very general terms only. Petitioners presented no credible evidence, for example, of how many drivers they had, how long on average they were away from home, or how much the per diem amount was. Petitioners failed to reasonably reconstruct the per diem expenditures within the meaning of section 1.274-5T(c)(5), Temporary Income Tax Regs., <u>supra</u>, and we sustain respondent's determination.

B.   <u>Schedule C Gross Receipts</u>

Respondent made no adjustment to petitioners' Schedule C gross receipts. Petitioners contend that Schedule C gross receipts should be reduced by $97,497 and $532,741 for 1997 and 1999, respectively.

Sioux operated on a cash basis method of accounting.  For 1997 it reported Schedule C gross receipts of $4,797,495, and its general ledger for 1997 shows the same amount of gross receipts.  On the 1999 Schedule C it reported gross receipts of $3,697,917, and the general ledger shows the same amount of gross receipts.  Petitioners presented no credible evidence to prove that the gross receipts reported on Ms. Colvin's and petitioners' 1997 and 1999 Schedules C, respectively, were not correct.  Accordingly, we reject petitioners' argument that Sioux's Schedule C gross receipts, as claimed on Ms. Colvin's and petitioners' 1997 and 1999 returns, respectively, should be reduced.

C.   Depreciation Deduction

On the 1999 Schedule C petitioners reported a depreciation deduction of $240,392.  In the notice of deficiency respondent allowed an additional depreciation deduction of $81,461.  Petitioners contend that the additional depreciation deduction should be $137,309.  Petitioners bear the burden of proof, see Rule 142, but they presented no credible evidence or explanation to establish they are entitled to any additional depreciation deduction.  Accordingly, petitioners are not entitled to the additional depreciation deduction.

IV.  Section 6662(a) Penalty for 1998 and 1999

Generally, section 6662(a) and (b)(1) authorizes the Commissioner to impose a 20-percent penalty on the portion of an

underpayment of income tax attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. Disregard of rules or regulations is careless if "the taxpayer does not exercise reasonable diligence to determine the correctness of a return position" and is reckless if "the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe." Sec. 1.6662-3(b)(2), Income Tax Regs.; see also Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Section 6662(a) and (b)(2) also authorizes the Commissioner to impose a 20-percent penalty if there is an under payment due to a substantial understatement of income tax. An "understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable

year exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty.  See sec. 7491(c).  Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had reasonable cause or substantial authority for the position.  See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

The exact amount of the understatement shall be computed as part of the Rule 155 calculations.  Even if the understatement is not substantial, respondent met his burden of production with respect to negligence by showing that petitioners claimed deductions to which they were not entitled.

Petitioners had the burden of producing sufficient evidence to prove that respondent's penalty determinations are incorrect.  See id. at 446-447.  Petitioners argue that the penalties do not apply because respondent failed to introduce any evidence.  However, once the Commissioner meets his burden of production under section 7491(c), the taxpayer bears the burden of showing that the determination is incorrect.  Petitioners failed to

establish that they were not negligent or that the substantial understatement penalty should not apply.[10]

We have considered the remaining arguments made by the parties and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.

---

[10]Sec. 6664(c)(1) provides an exception from the penalty determination with respect to any portion of an underpayment if the taxpayer shows that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Reliance upon the advice of a tax professional may establish reasonable cause and good faith. See United States v. Boyle, 469 U.S. 241, 250 (1985). Petitioners do not argue that the exception of sec. 6664(c)(1) to the sec. 6662(a) accuracy-related penalty applies, nor does the record allow us to conclude that relief is appropriate.