Aida L. **MORALES**, et al., Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. No. 89–0492 (JP).

United States District Court,
D. Puerto Rico.

Oct. 8, 1992.

Ramón L. Walker Merino, Old San Juan, P.R., Diego Pagán Gutiérrez, Hato Rey, P.R., for plaintiffs.

José F. Blanco Torres, Assistant U.S. Atty., Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

On December 15, 1986, a delegate of the Secretary of the Treasury assessed against plaintiffs Aida L. Morales and César Toledo a 100 percent penalty pursuant to 26 U.S.C. § 6672 for social security taxes due from Puerto Rico International Airlines (hereinafter "Prinair") for the tax quarters ending September 30, 1984, and December 31, 1984, in the amounts of $60,937.13 and $109,429.83, respectively.[1] On February 9, 1987, a 100 percent penalty was assessed against plaintiff José Facundo for the same periods and in the same amounts. On August 24, 1987, an additional assessment was made against plaintiff Morales for the tax quarters ending June 30, 1984, and September 30, 1985, in the amounts of $51,082.99 and $35,304.62, respectively. On September 28, 1987, and September 21, 1987, additional assessments were made individually against plaintiffs Facundo and Toledo for the tax quarter ending June 30, 1984, in the amount of $51,082.99.

On March 25, 1987, plaintiffs Morales and Facundo paid $359.58 and $476.30, re-spectively, toward the taxes due. On March 27, 1987, plaintiff Toledo paid $373.64 toward the taxes due. Along with the payments, plaintiffs filed claims for refunds asserting that they are not liable under 26 U.S.C. § 6672 and therefore should not have been assessed the 100 percent penalties. By letters dated April 9, 1987, and April 17, 1987, the Internal Revenue Service (hereinafter "IRS") notified plaintiffs of the disallowance of their claims for refunds.

On April 10, 1989, plaintiffs filed their Complaint in this action seeking recovery of the payments, which they assert were illegally and erroneously assessed and collected. The United States filed an Amended Answer and Counterclaim on July 31, 1989, claiming the remaining unpaid balance of the assessments plus interest. The United States also filed a Third Party Complaint against John Burns on October 2, 1989, seeking (i) the unpaid balance of assessments made against Burns for the tax quarters ending September 30, 1984, December 31, 1984, May 30, 1985, and June 30, 1985, in the total amount of $239,405.41 and (ii) indemnification for any refunds ordered made to plaintiffs Facundo and Toledo in this action.

## I. BACKGROUND

Plaintiffs José Facundo and César Toledo were part of a group of individuals who participated in the formation of the Caribbean Basin and Latin American Investment Company (hereinafter "Caribbean Basin"), a holding company created solely for the purpose of acting as a vehicle to purchase Prinair and which owned 98 percent of its stock. On June 21, 1984, Facundo was elected President and Chief Operating Officer of Prinair. In this capacity, he oversaw the daily operations of the airline, managed its personnel, signed contracts with unions and suppliers, managed the payment of creditors, and negotiated to secure financing. During the period relevant in this case, he was an authorized signator on most of the corporation's checking ac-

---

**1.** *See infra* at pp. 1066–68 for a discussion of the 100 percent penalty under 26 U.S.C. § 6672.

counts. As a senior management official, he was aware of the obligation to withhold federal taxes, met with IRS personnel in an attempt to pay the taxes, and signed an agreement to pay the taxes on behalf of Prinair.

On June 21, 1984, plaintiff Toledo was elected Chief Executive Officer and Chairman of the Board of Directors of Prinair. In this capacity, his chief responsibility was to oversee the entire operation and secure long-term financing for the corporation. During the relevant period of time, he personally guaranteed corporate debts, loaned personal funds to the corporation, and executed promissory notes on behalf of the corporation. He was aware of the corporation's obligation to withhold the trust fund taxes. When he discovered that the trust fund taxes had not been paid, he directed that Facundo and Morales insure that funds be set aside to pay the IRS.

Plaintiff Aida Morales was hired by Prinair in 1983 to act as its Assistant Comptroller. On September 15, 1984, she became Treasurer of the corporation. During the second week of August 1984, she began signing corporate checks on behalf of Prinair. By September 15, 1984, at the latest, she was in charge of all accounting and financial operations within the corporation, as well as its cash flow and bank accounts. In this capacity, she was an authorized signator on the corporation's most significant bank accounts and the only authorized signator on an emergency checking account maintained by the corporation. She also possessed the ability to obtain loans and credit on behalf of the corporation. In her role as Comptroller, Morales was responsible for preparing, signing and filing the corporation's quarterly form 941 withholding tax returns. She also signed the corporation's Puerto Rico tax returns. She ceased her employment with the corporation on June 15, 1985.

Mr. Rafael Colón was in charge of all accounting matters at Prinair, including the withholding and payment of all taxes, for a period terminating on August 14, 1984, on which date he was fired for disloyalty. He held broad, but not exclusive, check signing authority in all Prinair bank accounts. Colón was never assessed the 100 percent penalty by the IRS, despite the fact that he appears to have been a liable party under the Section 6672.

Each of the plaintiffs first learned that the corporation had an unpaid trust fund liability between the months of August 1984—when Colón was terminated—and February 1985. During the taxable periods at issue, plaintiffs decided the order in which Prinair's fiscal obligations would be met. Facundo took a more active role in making these decisions. After receiving knowledge that the trust fund liability existed, Morales directed wire transfers of funds and Morales, Toledo and Facundo signed numerous checks to creditors other than the United States totalling over a million dollars in an effort to keep the company in business.

On February 28, 1985, Facundo, acting on behalf of Prinair, signed an agreement with the IRS that provided for the payment of $740,919.00 in employment taxes for the final three quarters of 1984, in six installment of $100,000.00 with the remainder to be paid by May 31, 1985. Pursuant to this Installment Agreement, the payments were to be applied first to the oldest period (June 30, 1984), with penalties and interest, then to the subsequent periods. Payments in the total amount of $663,022.65 were made between March 5 and May 31, 1985, reducing the corporation's liability to $128,873.00. In early June 1985, $257,586.45 was transferred from a Prinair account to the IRS. This money was returned, however, after a judgment was entered in this District in Civil Action No. 85–1553 (JAF) in favor of American Casa Distributors, Inc., and against the United States, based on a finding that Prinair's tax liabilities had been credited with levy proceeds that belonged to American Casa. After this determination was made, the funds were returned to American Casa and the credit given to Prinair was rescinded.

On May 5, 1985, Prinair was sold to Mr. John Burns, who received full disclosure of the corporation's tax liability and the terms of the agreement with the IRS. Burns

negotiated with the IRS and succeeded in entering into a new agreement for the payment of the debt. At this time, Morales was without significant authority at Prinair. Two weeks after the new agreement was entered into, Prinair failed to comply with its terms. In response, the IRS served a notice of levy against Prinair bank accounts in New York and Puerto Rico. Several notices were withdrawn, however, after Prinair entered into a second agreement with the IRS. When Prinair failed to comply with the second agreement, the IRS seized Prinair property, which was sold at a public auction and yielded gross proceeds of $161,958.00.

The United States filed a Motion for Partial Summary Judgment in this action on January 5, 1990, seeking judgment against plaintiff Morales for the tax quarters ending September 30, 1984, and December 31, 1984, and against plaintiffs Toledo and Facundo for the same periods as well as for the tax period ending June 30, 1984, on grounds that plaintiffs were "responsible" parties who are personally liable for Prinair's unpaid employment taxes because they "willfully" failed to comply with various withholding and payment requirements. Plaintiffs filed an Opposition and a Cross–Motion for Summary Judgment on February 20, 1990, in which they do not directly challenge the government's assertions regarding their responsibility for collecting, truthfully accounting for, and paying over federal taxes or the fact that after discovering that federal taxes were owing they ordered payments to creditors other than the United States. Instead, plaintiffs sally forth with a full quill of defensive arrows. Plaintiffs contend that:

(i) the presumption of correctness usually given to IRS assessments does not operate in this case because the IRS has shown an inability to correctly assess the facts in this case, as is exhibited by the facts that (a) Prinair made a payment of

$50,000.00 to the IRS on March 25, 1985, which the IRS contends it never received and (b) the IRS file on Prinair has disappeared (*accord Coleman v. United States*, 704 F.2d 326 (6th Cir.1983) (where government is without any documents to support an assessment because it lost financial documents delivered by taxpayer, taxpayer satisfied burden of proving that assessment was arbitrary and could not be enforced));

(ii) plaintiffs can carry their burden of proof and show that the assessments were arbitrary and unreasonable or that they were in fact paid; specifically, the IRS illegally imposed a 100 percent penalty for the period ending June 30, 1984, reversing a prior conclusion arrived at by a revenue agent in charge of the Prinair account two years before that the corporation's tax liability for that period had been satisfied;

(iii) the loss of the Prinair files by the IRS, which has not been explained, has deprived plaintiffs of the opportunity to defend themselves adequately; [2]

(iv) the IRS arbitrarily and erroneously applied the payments made by Prinair under the Installment Agreement to other outstanding taxes;

(v) the IRS acted in a fashion that eliminated any possibility of the reacquisition of control of Prinair or the collection of its $600,000.00 credit by Caribbean Basin, thereby damaging plaintiff Toledo; [3]

(vi) the IRS discriminated against plaintiffs for not having made an assessment of the 100 percent penalty against Rafael Colón for the second and third quarters of 1984;

(vii) plaintiffs were only guarantors of the trust fund payments owed by Prinair so that when the IRS entered into new agreements with Prinair after it was purchased by Burns plaintiffs were exoner-

---

**2.** This contention will not be considered by the Court. It appears as a naked assertion in plaintiffs' memorandum which is not explained or discussed. As a result, it also has not been placed before the Court in any reasonable fashion and will be ignored.

**3.** The Court will not discuss this contention in any detail. This fact could be relevant only to a counterclaim filed by plaintiff Toledo and no such counterclaim has been filed.

ated from liability (*see* 31 L.P.R.A. § 4955);

(viii) the agreements entered into between the IRS and Prinair after it had been sold to Burns operated as a novation and extinguished all responsibility for the amounts owed on the part of plaintiffs; and

(ix) the 100 percent penalties were imposed after the time provided by the applicable statute of limitations.

Most of plaintiffs' assertions fly far afield of their intended targets. Their more reasonable defenses, and the contentions of the United States, are discussed below.

## II. DISCUSSION

### A. 26 U.S.C. § 6672

■ Section 3102(a) of the Internal Revenue Code requires an employer to deduct and withhold social security taxes from the wages paid to its employees. 26 U.S.C. § 3102(a). Section 7501 of the Code provides that such amounts must be held by the employer in a special trust fund for the benefit of the United States. 26 U.S.C. § 7501. These "trust fund taxes" are for the exclusive use of the United States and may not to be used to pay the employer's business expenses, including salaries, or for any other purpose. *Gephart v. United States*, 818 F.2d 469, 472 (6th Cir.1987) (citation omitted); *Mueller v. Nixon*, 470 F.2d 1348, 1351 (6th Cir.1972), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973).

■ The IRS has at its disposal several techniques to effect payment by corporate employers of taxes either not withheld from employee wages or taxes withheld from employee wages but not paid over to the Treasury. Most of these techniques

are directed at the offending corporation;[4] however, to insure compliance with the withholding provisions, and to provide the IRS with an alternate source from which to collect the taxes not paid over by an offending corporation,[5] Congress enacted Section 6672, which provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

26 U.S.C. § 6672. A "person" for purposes of Section 6672 includes an officer or employee of a corporation who is under a duty "to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671. The liability imposed by Section 6672, which is referred to as the "100 percent penalty" because it is for the full amount of the taxes not remitted to the Treasury, is therefore applicable to any official or employee who (i) is "responsible" for collecting, truthfully accounting for and paying over taxes and (ii) "willfully" fails to pay over the taxes. *Slodov v. United States*, 436 U.S. 238, 245, 98 S.Ct. 1778, 1784, 56 L.Ed.2d 251 (1978); *Caterino v. United States*, 794 F.2d 1, 3 (1st Cir.1986), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987) (citations omitted).

A federal tax assessment is deemed to be correct unless and until the person against whom the assessment was made proves by a preponderance of the evidence that he is not liable for the taxes sought. *Accord*

---

4. *Accord* 26 U.S.C. § 7512 (IRS may require employer to deposit withheld taxes in a special bank trust account to be held until paid over to the Treasury at the end of the quarter); 26 U.S.C. § 2501 (with respect to trust funds past due, the amount withheld must be placed in a special trust fund account to be assessed, collected and paid in the same manner as the taxes from which the funds arose); 26 U.S.C. § 6656 (five percent penalty for underpayment of any tax required to be deposited).

5. Where the employer withholds social security taxes but fails to pay over the funds, the employee is not liable to the government for the amount of the withheld taxes and is entitled to credit notwithstanding the employer's default. *See, e.g., Dillard v. Patterson*, 326 F.2d 302 (5th Cir.1963); *Dorsey v. United States*, 66–2 U.S.T.C. ¶ 9521 (S.D.N.Y.1966). The government will therefore lose funds if it is unable to collect the amounts withheld from some source.

*Sinder v. United States,* 655 F.2d 729, 731 (6th Cir.1981); *see also Reinecke v. Spalding,* 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385 (1930) (in a refund action plaintiff carries the burden of proof). A party against who the 100 percent penalty is imposed therefore has the burden of proving by a preponderance of the evidence that he was not a "responsible" party or that the failure to pay the tax was not "willful." *Accord Caterino, supra,* 794 F.2d at 5 (citing *United States v. Rexach,* 482 F.2d 10, 17 (1st Cir.), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973)).

■ Courts construing Section 6672 have interpreted the word "responsible" broadly to include individuals who have the duty to collect, account for, or pay over the taxes withheld or who have significant control over the disbursement of funds. *Accord Thomsen v. United States,* 887 F.2d 12, 16 (1st Cir.1989) (citations omitted); *Caterino, supra,* at 5 (citations omitted). Indicia of responsibility, in addition to the holding of corporate office, include control over financial affairs, the authority to disburse corporate funds, access to company books and records, stock ownership, and the ability to hire and fire employees. *Thomsen, supra,* at 16 (citations omitted); *see also George v. United States,* 819 F.2d 1008, 1011 (11th Cir.1987); *Neckles v. United States,* 579 F.2d 938 (5th Cir.1983). Liability under Section 6672 is therefore not limited to one individual in absolute control but instead may be imposed upon all individuals who have significant control over the disbursement of funds. *Caterino, supra,* at 5.

■ The word "willful" when used in *criminal* statutes generally requires proof of evil motive, specific intent, or the absence of any justifiable excuse. *Accord United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933), *overruled on other grounds by Murphy v. Waterfront Com. of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). This narrow definition is not applied in a Section 6672 context, however, because although the statute speaks of a "penalty" to be imposed, it is civil in nature. *Thomsen, supra,* at 17 (1st Cir.1989)

(citing *Cash v. Campbell,* 346 F.2d 670, 673 (5th Cir.1965)). In a Section 6672 context, "willful" merely requires a showing of a " 'voluntary, conscious, and intentional decision to prefer other creditors to the United States.' " *Caterino, supra,* at 6 (quoting *Harrington v. United States,* 504 F.2d 1306, 1311 (1st Cir.1974)); *see also Newsome v. United States,* 431 F.2d 742, 746 (5th Cir.1970) (belief that sufficient funds will be available when payment becomes due is no excuse); *Emshwiller v. United States,* 565 F.2d 1042, 1045 (8th Cir, 1977) (belief that payment to other creditor will keep business solvent and provide funds to be available when payment becomes due is no excuse).

■ Plaintiffs make little attempt to show that they were not responsible parties. Facundo and Toledo, inasmuch as they possessed and exercised significant control over the corporate finances of Prinair in each of the last three quarters of 1984, are clearly responsible parties under Section 6672. *Accord Caterino, supra,* 794 F.2d at 5. Morales was perhaps not as responsible as her co-plaintiffs; however, as Treasurer of the corporation, she signed tax returns, possessed the ability to disburse corporate funds, to obtain loans or financing, to make basis corporate decisions, and to control corporate financial affairs. The fact that she did not have final authority in many of these areas, or that the other plaintiffs may have been more responsible in many of these areas, does not absolve her of liability. Plaintiffs also do not contest that they acted "willfully" in that they knowingly caused creditors of Prinair other than the United States to be paid during the periods when the employment taxes accrued. As a result, defendants have shown as a matter of law that plaintiffs are responsible parties who acted willfully in failing to comply with their responsibilities under the Internal Revenue Code.

B. **Plaintiffs' Defenses**

1. **Burden of Proof**

Plaintiffs contend that the normal burden of proof in tax cases, which presumes

correctness in the IRS assessment, should not apply in this case. The contention is fanciful since the case cited by plaintiffs, *Coleman v. United States*, 704 F.2d 326 (6th Cir.1973), directly refutes it. *Coleman* discusses *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), in which the Supreme Court found that where the IRS has made an assessment "without any rational foundation" the usual rule with respect to the burden of proof in tax cases might not apply, since "proof that an assessment is utterly without foundation is proof that it is arbitrary and capricious." *Id.* at 441–43, 96 S.Ct. at 3026–27. The Sixth Circuit concluded in *Coleman* that:

> the precise holding of *Janis* does not create an 'exception' to the usual burden upon the taxpayer; rather, it teaches that the burden is met when the assessment is shown to be more than merely erroneous; that is, an assessment is *per se* arbitrary and unenforceable when it is established that it is 'naked' and 'utterly' without [evidentiary] foundation.'

*Coleman*, 704 F.2d at 328 (footnote omitted). Plaintiffs' citation to *Coleman* is therefore unavailing. The IRS has presented considerable evidence in this case to show that the assessments were not "naked" or otherwise lacking an evidentiary foundation. The usual burden of proof applies in full force in this case.

2. Arbitrary and Unreasonable Assessments

■ Plaintiffs assert, through argumentation that can euphemistically be described as confused, that the IRS used faulty procedures or otherwise acted unreasonably or inconsistently in the computation of plaintiffs' liability. The arguments contained in plaintiffs' memorandum on this issue fail to place the issue before the Court in a proper manner. A similar argument was presented in *Ruth v. United States*, 823 F.2d 1091 (7th Cir.1987), in which the Seventh Circuit stated:

> In general, courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment.... The question at issue is whether [plaintiff] was a responsible person who willfully violated section 6672 duties. As long as the procedures used and the evidence relied upon by the government to determine the assessment had a rational foundation, the inquiry focuses on the merits or the tax liability, not on IRS procedures.

*Id.* at 1094. In this case, plaintiffs have presented no valid evidence demonstrating that the procedures used and evidence relied on by the IRS lacked a rational foundation. The fact that the IRS altered its opinion regarding amounts owed by plaintiffs or changed the agents assigned to the account, without a showing that an assessment was erroneous or unreasonable, is of no value to plaintiffs. These facts are of particularly little value in light of the affidavit filed by Revenue Officer Jorge Manrique, in which he explains how Prinair's liability was determined and redetermined using a standard computer program. The Court finds that plaintiffs' have not presented any reliable information to suggest that the assessments made against them were arbitrary or unreasonable.

3. Failure to Impose Penalty on Rafael Colón

Plaintiffs contend that they were "discriminated" against in that the 100 percent penalty was imposed upon them but not Rafael Colón, a Prinair employee who appears to have been a liable party under Section 6672.

■ Liability under Section 6672 is not limited to one individual in absolute control but instead may be imposed upon all individuals who have significant control of the disbursement of funds. *Accord Caterino, supra*, at 5. Plaintiffs have cited no authority for the proposition that because the IRS *may* impose the 100 percent penalty on all such individuals it *must* impose the penalty on all such individuals or impose no penalty at all. By contrast, defendants have directed the Court's attention to contrary authority. *See Calderone v. United States*, 799 F.2d 254, 258 (6th Cir.1986) (citations omitted) (" 'When the Government seeks satisfaction of the pay-

roll tax liability vis-a-vis an assertion of the 100–percent penalty assessments, it is entitled to "choose the liable parties from whom it will collect." ' ") Plaintiffs assertion on this point is therefore legally flawed and must fail.

### 4. Exoneration

Plaintiffs have presented the Court with several defenses based on various provisions of the Puerto Rico Civil Code. The Court is reluctant to consider any of these assertions since plaintiffs have not explained how the Puerto Rico Civil Code can be utilized to undermine liabilities established under federal law. *See Cook v. United States*, 765 F.Supp. 217, 220 (M.D.Pa.1991) (quoting *Schoot v. United States*, 664 F.Supp. 293, 297 (N.D.Ill.1987) (" '[T]here is no subject matter jurisdiction for [federal courts] to consider [ ] actions grounded upon state law in the same action where the government seeks enforcement of its section 6672 penalties.' ") The Court has nonetheless considered two of the arguments, which in addition to their more technical frailties, are substantively flawed.[6]

■ Plaintiffs first defense under the Puerto Rico Code is based on the law of exoneration. Citing *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), they contend that since Prinair was primarily responsible for the collection and payment of the trust fund taxes they are merely guarantors in regard to the taxes not paid. They further contend that when the IRS entered into agreements with Prinair after it was acquired by John Burns, plaintiffs were exonerated for any liability under Puerto Rico law. In support of this proposition they cite to Arti-

cle 1750 of the Puerto Rico Civil Code, which provides:

The extension granted to the debtor by the creditor, without the consent of the surety, extinguishes the security.

31 L.P.R.A. § 4955. They assert that pursuant to this provision when the IRS granted an extension of time to Prinair, the creditor, without the consent of plaintiffs, who were acting as sureties, plaintiffs' liability was extinguished.

The Supreme Court's opinion in *Slodov* did not, however, hold that individuals subject to the 100 percent penalty act as guarantors for the payment of delinquent taxes. On the contrary, the *Slodov* Court explained in detail that the purpose of Section 6672 is to provide the government with a separate and independent source from which to collect delinquent payments. The liability of an individual under Section 6672 is "totally *independent* of the corporation's obligation to pay over employee withholdings to the government." *Peterson v. United States*, 728 F.Supp. 624, 625 (D.Idaho 1989) (citing *Teel v. United States*, 529 F.2d 903, 906 (9th Cir.1976); *Young v. United States*, 609 F.Supp. 512, 517 (N.D.Texas 1985); *Hutchinson v. United States*, 559 F.Supp. 890, 894 (N.D.Ohio 1982)). Plaintiffs' attempt to avert liability based on the subsequent conduct of the corporation is therefore unavailing.[7]

### 5. Novation

■ Plaintiffs' second defense based on the Puerto Rico Civil Code relates to the law of novation. The law of Puerto Rico on novation is contained in Article 1158 of the Civil Code, which provides:

---

6. Plaintiffs claim that when the IRS voluntarily credited the Prinair account with the funds later returned to American Casa, this had the effect of releasing plaintiffs from any liability. *See* 31 L.P.R.A. § 4953 ("If the creditor voluntarily accepts real estate or any other goods in payment of the debt, even should he afterwards lose them on the release of eviction, the surety shall be released.") The Court will not consider the merits of this argument. It is rejected solely on the ground that the cited Code provision cannot control in this federal question case.

7. Under appropriate circumstances, an individual against whom the 100 percent penalty is assessed may have a right to indemnity or contribution under state law; however, federal courts lack subject matter jurisdiction to hear state claims at the same time they consider the appropriateness of an assessment under Section 6672. *Accord Cook v. United States*, 765 F.Supp. 217, 220 (M.D.Pa.1991). A party seeking such relief must file a separate state claim in a subsequent proceeding. *Id.*

In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points.

31 L.P.R.A. § 3242. A novation may therefore occur in two different ways, both of which reflect the fact that a novation is never presumed. *Accord Francisco Garratón, Inc. v. Lanman & Kemp–Barclay & Co.*, 559 F.Supp. 405, 407 (D.Puerto Rico 1983). First, the parties may expressly state their will to novate, which must be established conclusively, without any trace of doubt. *Warner Lambert v. Superior Court*, 101 P.R.R. 535, at 544–45 (1973). The will of the parties to novate may be drawn directly from the superseding agreement or inferred from the surrounding circumstances. *Id.* at 544 (citing *Hernández v. Burgos*, 40 P.R.R. 440, 443 (1930)). If the parties expressly state their intent, extinctive novation may operate even if the only alteration of the agreement involves a simple modification of a secondary condition. *Warner Lambert* at 545 (citations omitted). Second, the parties may indicate their will to novate by entering into a superseding agreement that is "incompatible in all points" with its predecessor. The superseding agreement must reflect more than the modification of only one of the principal conditions of the contract. *Id.* It must reflect "such a radical change in the nature of the new obligation when compared with the old as to make them mutually excludable and unable to coexist." *Francisco Garratón, supra*, at 407 (citation omitted).

Plaintiffs have not claimed that any express novation was entered into in this case. They therefore rely on a claim that the agreement entered into by Prinair under the direction of Burns was "incompatible on all points" with the Interim Agreement entered into by Prinair under their direction. Amongst other infirmities, plaintiffs' contention on this point fails to recognize that the IRS's efforts to collect the unpaid taxes from Prinair after it had been sold to Burns are not "inconsistent" with its collection efforts against plaintiffs under Section 6672. On the contrary, it is the IRS's statutory duty to ensure the full collection of all outstanding taxes and to seek collection from all individuals against whom an assessment has been made. *See USLIFE Title Insurance Co. v. Harbison*, 784 F.2d 1238 (5th Cir.1986). Plaintiffs therefore cannot show that any extinctive novation occurred in this case.

### 6. Statute of Limitations

Plaintiffs' argue that the assessments made against them for the period ending June 30, 1984, were made after the expiration of the applicable three-year statute of limitations, which states:

> ... the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

26 U.S.C. § 6501(a). The assessments against plaintiffs were made on August 24, 1987 (Morales), September 28, 1987 (Facundo), and September 21, 1987 (Toledo), which may appear at first blush to be outside the three-year period. A separate provision of the Code provides, however, that

> [f]or purposes of this section, if a return of tax imposed by chapter 3, 21, or 24 for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such calendar year.

26 U.S.C. § 6501(b)(2). Prinair's July 30, 1984, return is dated July 31, 1984. It is therefore deemed to be filed on April 15, 1985. *See Lesher v. United States*, 440 F.Supp. 372, 375 (N.D.Ill.1977) (Form 941 filed on November 11, 1971, deemed filed on April 15, 1972). As a result, the assessments were made within the three-year limitations period and plaintiffs' statute of limitations defense must fail.

### 7. Breach of Installment Agreement

Plaintiffs' final argument that the IRS breached the Installment Agreement entered into by Facundo, acting on behalf of Prinair, and the IRS, by arbitrarily applying payments made by Prinair under the Agreement to other outstanding taxes. The United States counters, relying on the deposition testimony of Revenue Officers José Ramos Ortiz, Angel Matos and Jorge Manrique, that it was Prinair who breached the Installment Agreement, leaving the IRS free to apply any subsequent payments it received from Prinair to any periods for which there existed unpaid liabilities.

 The IRS has discretion to apply funds paid in connection with the delinquent taxes of a corporation to that portion of the corporation's tax liability least likely to be collected. *Accord Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Emshwiller v. United States,* 565 F.2d 1042, 1046 (8th Cir.1977); *see also Gates v. United States,* 409 F.2d 1320, 1322 (9th Cir.1969); *Datlof v. United States,* 370 F.2d 655, 658 (3d Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). This discretion is curtailed, however, where there exists an agreement, direction, or request by the creditor to apply the payments in a particular fashion. *Accord Pacific National Ins. Co. v. United States,* 422 F.2d 26 (9th Cir.), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 *reh'g denied,* 400 U.S. 883, 91 S.Ct. 116, 27 L.Ed.2d 121 (1970); *Hewitt v. United States,* 377 F.2d 921 (5th Cir.1967); *Liddon, supra; Emshwiller, supra.* Where the creditor breaches the agreement or withdraws the direction or request, the IRS again enjoys full discretion in applying the submitted funds.

 Although the nature and limits of the government's discretion are clear, the facts in this case are not. The evidence presented to the Court is insufficient to justify either the entry of partial summary judgment in favor of the United States or of summary judgment on behalf of plaintiffs on this point. The United States has directed the Court's attention to conclusory statements by various IRS agents to the effect that Prinair breached the Installment Agreement. These statements provide no explanation as to how and when Prinair breached the Agreement. The plaintiffs, on the other hand, have merely stated that the IRS breached the Agreement, without pointing to any relevant evidence. As a result, an issue of fact exists as to whether (i) the IRS breached the Installment Agreement and thereby misapplied payments made by Prinair or (ii) Prinair breached the Installment Agreement, leaving the IRS free to apply later payments made by Prinair in whatever it considered to be an appropriate fashion.

If the United States can establish that Prinair breached the Interim Agreement, partial summary judgment in favor of the United States is appropriate. If, on the other hand, plaintiffs can show that the IRS breached the Installment Agreement, summary judgment in favor of plaintiffs may be appropriate. The Court finds that it is in the interest of justice to deny the cross motions for summary judgment conditionally, pending additional memoranda presenting information to the Court regarding only on the facts surrounding the alleged breach of the Installment Agreement. The case will proceed to trial only if this issue continues to be genuinely disputed in light of the supplemental memoranda.

### III. CONCLUSION

The United States has shown that as a matter of law plaintiffs were responsible parties who acted willfully in violating their obligations under Section 6672. The majority of plaintiffs defenses to the assessments under Section 6672 are either inapplicable or unavailing; however, they have shown that an issue of fact exists regarding the breach of the Installment Agreement. The Court hereby GRANTS the parties leave to file, on or before October 20, 1992, supplementary memoranda on this issue, which must be limited to this topic and should not require a great deal of discussion but may be accompanied by additional evidence or sworn statements.

The Court also hereby ORDERS the United States to file, on or before October 20, 1992, either an Informative Motion stating that it intends to pursue its claims against plaintiff Morales for the other taxable periods at issue and against third-party defendant Burns, or a Motion for Voluntary Dismissal of all or part of these claims.

IT IS SO ORDERED.