**CERAMIC ENTERPRISES, INC., Plaintiff**

v.

**DEXION INCORPORATED; Interlake, Inc., Defendants.**

**No. CIV. 97–1037 JP.**

United States District Court, D. Puerto Rico.

Feb. 3, 1998.

María S. Jiménez Meléndez, Mellado & Mellado Villareal, San Juan, PR, for Plaintiff.

Gregory T. Usera, Schuster, Usera, Aguiló & Santiago, San Juan, PR, for Defendants.

### OPINION AND ORDER

PIERAS, District Judge.

## I. INTRODUCTION AND BACK-GROUND

Now before the Court are the parties respective Motions for Summary Judgment (docket Nos. 20 & 21), their respective oppositions, and Dexion's Reply to Plaintiff's Opposition to Summary Judgment. At the Initial Scheduling Conference, the parties agreed that this case turns on a question of law. The case involves a lease ("Lease") between Plaintiff Ceramic Enterprises, Inc. ("Ceramic") and Dexion Caribe, Inc. ("Caribe") signed by Defendant Dexion Incorporated ("Dexion") as guarantor and a corresponding Guaranty Agreement ("Guaranty") between Ceramic and Dexion securing rent payments under the Lease. The Lease and Guaranty were executed on January 15, 1973 and May 11, 1973, respectively. Caribe having entered into bankruptcy and defaulted on the Lease, Ceramic now brings this action to enforce Dexion's obligation as guarantor under the Lease and Guaranty. The parties stipulated to the following facts:

1. On January 15, 1973, Ceramic Enterprises, Inc. ("Ceramic" or "Plaintiff") and Dexion Caribe, Inc. ("Caribe") entered into an agreement for the lease of warehouse property. At that time Caribe was a subsidiary of Dexion Incorporated ("Dexion" or "Defendant") and Dexion signed the lease agreement as guarantor. The lease contained the following clause:

21. That the Guarantor jointly and severally with Lessee guarantees the full compliance by the Lessee of all the terms and conditions of this lease, and specifically binds itself to the payment of all rental payments due or which may become due under this contract of lease.

2. On May 11, 1973, a Guaranty agreement was signed between Dexion and Ceramic by which Dexion guaranteed the payments under the January 15, 1973 lease. The guaranty agreement contained the following provision:

(c) [Dexion Incorporated does hereby on behalf of itself, its successors and assigns] Covenant and agree with Lessor, its successors and assigns, that this agreement and guaranty shall remain and continue in full force and effect as to any renewal, extension, modification, amendment of said lease or changing of the use of the demised premises and as to any assignee or sublessee of Lessee's interest in said lease.

3. The obligation assumed by Dexion in 1973, when it became guarantor of the lease agreement between Ceramic and Caribe, was contingent on Caribe's unforseen violation of the lease agreement.

4. The January 15, 1973 lease agreement was subject to several extensions and modifications of its conditions.

Amendments to Indenture of Lease were subscribed in June 23, 1977, February 18, 1985, December 5, 1985, January 20, 1987, November 1, 1988, November 26, 1990, and November 15, 1993, between Ceramic and Caribe. Dexion did not sign any of these Amendments to Indenture of Lease as guarantor.

5. The price of the lease was modified several times upon its extensions. The price for the Lease ranged from an original monthly amount of $4,233.90 in 1973 to $3,790.41 after the evacuation by the lessee of 10,032 square feet, to $6,433.71 at the time this lawsuit was filed.

6. The duration of the Amendments to Indenture of Lease executed after the original lease agreement, ranged from one to five years.

7. The number of square feet in the leased warehouse was modified when Caribe vacated ten thousand and thirty-two (10,032) square feet of the original leased area.

8. Plaintiff claims a default of the January 15, 1973 lease agreement twenty four years after the execution of the guaranty agreement and nineteen (19) years after the expiration of the original lease agreement.

9. On January 15, 1996, Caribe filed a petition for relief under Chapter 7 of the Bankruptcy Code at the Bankruptcy Court for the District of Puerto Rico.

10. The final lease agreement expired on January 14, 1997.

Plaintiff correctly points out in its Motion for Summary Judgment that the controversy underlying this case can be reduced to whether or not Defendant's obligation under the Lease and Guaranty remained in force through the last amendment of the Lease.

## II. SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides:

"[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). To make this determination, the Court must cull the record for genuine disputes of material fact, drawing all reasonable inferences in favor of the party against whom summary judgment is sought. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). "Material means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorable to the nonmovant." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). "A dispute is genuine if the parties' positions on the issue are supported by conflicting evidence." *Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir.1996). If there are material factual disputes, summary judgment is inappropriate.

When faced with a motion for summary judgment, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed.R.Civ.P. 56(c). "In addition, a court may take into account any material that would be admissible or usable at trial ... [but] inadmissible evidence may not be considered." *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir.1993). Moreover, "mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." *Id.* (citing *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir.1992)); *accord Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (a court need not credit "conclusory allegations, improbable inferences, and unsupported speculation"); *Int'l Ass'n of Machinists and Aerospace Workers*, 103 F.3d at 200.

"Where the Court is deciding an issue at the summary judgment stage for which it would bear responsibility for determining at trial, and the Court has before it all of the evidence from which it would make that determination at trial (here, the patent itself and the prosecution history), the Court may determine the issue as if at trial." *Industrias Metalicas Marva v. Empresas Lausell,* 1997 WL 557626 *7 n. 8 (D.Puerto Rico) (J. Pieras); *Posadas,* 856 F.2d at 400.

## III. ANALYSIS

There is no dispute that Dexion obligated itself in 1973 to secure rent payments under the lease of warehouse space from Ceramic to Caribe. There is also no question that the Guaranty specifically provided that Dexion's obligation was to remain and continue in full force and effect as to any renewal,.extension, modification, of amendment of the Lease. Plaintiff argues that the Lease remained in effect, through various extensions, until Caribe filed bankruptcy and breached, at which time Dexion's obligation under the Guaranty came due. Dexion argues that the Lease and, therefore, its guaranty obligation were extinguished prior to Caribe's breach. .The disposition of this case boils down to a deceivingly simple question: Did Dexion's obligation to guaranty Caribe's lease terminate for any reason between 1973 and the date Caribe breached its lease agreement? Dexion proposes several bases for a finding of extinction. The Court will analyze each.

### A. Lapse Between Second and Third Amendments to Indenture of Lease

■ The Lease was executed in 1973 for a term of five years with an option to extend for an additional five years. On June 23, 1977, Caribe and Ceramic extended the Lease for five years, to expire on January 14, 1983. On January 14, 1983, they entered a

second amendment, agreeing to extend the Lease for an additional term of two years. Amendment No. 2 to Indenture of Lease provided: "The term of the lease shall be extended for an additional period of TWO (2) YEARS, commencing on January 15, 1983 and expiring on January 14, 1985." As of January 14, 1985, the parties had not signed an extension to their lease agreement, and they did not do so until February 18, 1985. On that date they signed a third amendment extending the Lease for an additional year, beginning January 15, 1985 and ending January 14, 1986. Dexion asserts that when the January 14, 1983 extension of the Lease expired, its obligation to guaranty the original lease was extinguished. Defendant argues that the 35 day lapse necessitated Dexion's signature to reestablish the guaranty. Defendant cites Article 1723 of the Civil Code, P.R. Laws Ann. tit. 31 § 4873: "Security cannot exist without a valid obligation," [1] and Article 1746 of the Civil Code, P.R. Laws Ann. tit. 31 § 4951: "The obligation of the surety shall expire at the same time as that of the debtor, and for the same causes as all other obligations." [2] Likening expiration of the term of the contract to accord-and-satisfaction, Dexion points to *General Elec. Credit Leasing Corp. of Puerto Rico v. Southern Transport & Oil Distributing Corp.,* 93 J.T.S. 27, 10446–47 (Op. of February 22, 1993), in which the Supreme Court of Puerto Rico held that a guaranty was extinguished upon the accord-and-satisfaction of the underlying debt. Defendant also points to the Court's holding in *General Electric* that the guarantor's consent to a payment-in-kind transaction which affected the .guaranty meant that the transaction did not extinguish the obligation. Under this holding, Dexion argues, the extension of the lease agreement without Dexion's consent after Caribe's detachment from Dexion [3] and after the expira-

---

1. Defendant provides its own translation of Article 1723: "The guaranty cannot exist without a valid [principle] obligation." (brackets in Defendant's "translation").

2. Defendant again provides its own translation: "The obligation of the guarantor is extinguished as the same time that the debtor's obligation, and for the same causes that the additional obligations."

3. Dexion sold Caribe pursuant to a Stock Purchase Agreement dated December 30, 1985 among Interlake, Inc., Dexion, Caribe, and Mr. and Mrs. Pascual de Rojas, whereby Interlake sold all the Preferred Stock to Caribe, and Dexion sold 40% of the Common Stock to Mr. and Mrs. Pascual de Rojas and 60% of the Common Stock to Caribe. Dexion has provided the Stock Purchase Agreement. Although the Agreement has not been authenticated, Caribe has not con-

tion date of the first lease extension extinguished Dexion's obligation.

The Court disagrees with each of Dexion's contentions. Although the third amendment was not signed until February 18, 1985, it reads:

1. Lessee shall lease the demised premises for an additional period of ONE (1) Year, after the expiration of the actual term which ends on January 14, 1985, so the additional term of the lease will commence on January 15, 1985 and will expire on January 14, 1986.

3. All other terms and conditions of the Indenture of Lease as amended are to remain unchanged.

The written document merely embodies the agreement. The words of the written contract "are clear and leave no doubt as to the intentions of the contracting parties." P.R. Laws Ann. tit. 31 § 3471. Those terms clearly indicate that Caribe and Ceramic intended to *extend* their original lease agreement, in modified form, and that the extension was to commence upon expiration of the first extension, beginning January 14, 1985. In other words, the written document embodied an agreement that had commenced prior to the signing of the written document. That fact does not render the agreement invalid—the agreement to extend the Lease was consummated upon the parties' mere consent, P.R. Laws Ann. tit. 31 § 3375, and existed from the moment of consent. P.R. Laws Ann. tit. 31 § 3371. Thus, based on the clearly expressed terms of the contract, the Court must construe the amendment extending the Lease as having force beginning January 15, 1985, notwithstanding the fact that the written document embodying that amendment was not signed until later.

The parties' actions support that interpretation. P.R. Laws Ann tit. 31 § 3472. Looking at the course of the relationship between Caribe and Ceramic, particularly at the seven Amendments of Indenture into which they entered, it is clear that they never intended to enter a "new" lease agreement. While certain amendments were made (the Court will analyze the effect of the amendments, *infra*)˙ the amendments and extensions always made reference to the original agreement. Each amendment contains the clause: "All other terms and conditions of the Lease Agreement, as amended, are to remain unchanged." Each extension expressly commenced upon the completion of the previous term of lease. Moreover, nothing in the records demonstrates that either lessee or lessor ever acted consistently with a finding that the Lease was not in force, even when the Lease expired in the absence of a written extension. For example, Caribe never abandoned the premises; Ceramic never initiated eviction proceedings. It is clear from their actions that Caribe and Ceramic agreed to extend the Lease prior to actually signing the agreement in February.

■ Notwithstanding Dexion's reliance on *General Electric*, Dexion's failure to consent to the extension is immaterial. The original Guaranty did not require Dexion to agree to any extension in order for the Guaranty to continue in force. The Guaranty explicitly stated that Dexion would continue to Guaranty Caribe's obligation under the Lease regardless of modification, renewal, or extension. If the Court were to interpret the Contract to require Dexion's consent for its Guaranty to be enforceable, the Court would render nugatory the clause of the Guaranty pertaining to renewal, extension, modification, or amendment. That would contravene principled contract interpretation.[4] *See Lopez Maldonado v. Camejo*, 107 D.P.R. 132 (1978).

■ Dexion makes one additional argument with respect to the Third Extension.

tested the facts contained therein, and the Court will accept as true Caribe's sale. The Court does not understand Dexion's argument with respect to Caribe's detachment, because the Stock Purchase Agreement was entered after the Second Extension had been entered, i.e., while Dexion still owned Caribe.

4. Moreover, with particular respect to the Second Amendment of Indenture about which Dexion makes much ado, as the Court noted above, Dexion still owned Caribe when the Second Amendment was entered into and/or executed. If Dexion did not consent to Guaranty the Lease through the extension, it could have required Caribe to enter into a wholly new lease agreement not including its guaranty.

Caribe's failure to evacuate in the face of an expired lease "impliedly" renewed the lease agreement. Puerto Rico's Civil Code provides: "In the case of an implied renewal the obligations contracted by a third person for the security of the principal contract shall cease with regard thereto." P.R. Laws Ann. tit. 31 § 4064. Therefore, Dexion argues, its guaranty did not survive the period during which no actual agreement was in force, but only an implied renewal. This argument fails for two reasons. First, the Court has already determined, based on the clear language of the Third Amendment, that Caribe and Ceramic expressly renewed the Lease. Thus, any notion of "implied" renewal is inapposite. Second, the Court finds that § 4064 would not apply to extinguish Dexion's obligation in this case, because Dexion expressly provided in the Guaranty that its obligation would "remain and continue in full force and effect as to any renewal." The Court believes that § 4064 is designed to protect the guarantor who does not expressly accept the lengthening of his obligation by the principal debtor's unilateral actions implying renewal. But parties dealing at arms length can agree that an insurer's obligation will survive renewal just as Dexion covenanted in the Guaranty. Where the guarantor expressly accepts an obligation that survives "any renewal," § 4064 should not apply to prevent the guarantor's expressed intent.

### B. Extinctive Novation by Modification

■ Dexion next argues that the Lease was subjected to changes so significant in nature as to imply an extinctive novation. According to Dexion, when the conditions of a contract are modified, a completely new obligation arises extinguishing the original. In this case, where the price of the Lease, the term of the Lease, and the object of the Lease were all altered, Dexion asserts, the Lease was extinguished and replaced by a wholly new lease not guaranteed by Dexion. In other words, the amending of the Lease constituted the execution of a new lease. Again, the Court disagrees.

■ "Obligations may be modified (1) by the change of their object or principal conditions," P.R. Laws Ann. tit. 31 § 3241, but

"the Civil Code of Puerto Rico establishes stringent requirements for novation." *Federal Deposit Ins. Corp. v. P.L.M. Int'l, Inc.*, 834 F.2d 248, 251 (1st Cir.1987). "While [Dexion] correctly note[s] that the extinction of a principal obligation also extinguishes all accessory obligations," *id.* (citing P.R. Laws Ann. tit. 31 § 3245), "not every modification of an agreement produces extinction." *Id.* (citations omitted). "In order that an obligation ... be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points." P.R. Laws Ann. tit. 31 § 3242. "A novation may therefore occur in two different ways, both of which reflect the fact that a novation is never presumed." *Morales v. United States*, 805 F.Supp. 1062, 1071 (D.Puerto Rico 1992) (J. Pieras); *see also Warner Lambert Co. v. Superior Court*, 101 P.R.R. 527, 544–45 (1973). The parties to the Lease never made any express novation of the Lease. In fact, just the opposite occurred. Each time Ceramic and Caribe executed an amendment, they expressly stated that the terms of the Lease not subject to the current or prior amendment, remained unchanged.

■ Aside from express extinctive novation, nothing in any of the amendments entered into by Caribe and Ceramic constituted an implied novation by rendering the Lease, as extended, "incompatible in all points" from the Lease as entered in 1973. Changes in the price, duration, and square footage terms of the lease are not so material as to extinguish the Lease in favor of a new and separate lease not protected by Dexion's Guaranty. Extinctive novation operates only when the new obligation is "absolutely incompatible" with the old obligation. *P.L.M. Int'l*, 834 F.2d at 251; *Morales*, 805 F.Supp. at 1071. The "superseding agreement must reflect more than the modification of only one of the principal conditions of the contract... it must reflect such a radical change in the nature of the new obligation when compared with the old as to make them mutually excludable and unable to coexist." *United States v. Estate of Matos*, 1997 WL 557621 (D.Puerto Rico) (J. Pieras); *see also Goble & Jimenez, Inc. v. Dore Rice Mill, Inc.*, 108

D.P.R. 89, 96 (1978); and *Colon & Cia, Inc. v. Registrar*, 88 P.R.R. 64, 82 (1963). Generally, the Puerto Rico courts have refused to find a novation where the change is quantitative but leaves "intact the essential structure of the parties' obligations." *Ballester Hermanos, Inc. v. Campbell Soup Co.*, 797 F.Supp. 103, 107–108 (D.Puerto Rico) (J. Pieras) (discussing *Warner Lambert*, 101 P.R.R. 535; *Marina Industrial, Inc. v. Brown Boveri Corp.*, 114 P.R.R. 86, 91 (1983); and *G. & J. Inc.*, 108 P.R.R. 89). Here, only quantitative terms were altered by the extensions—the amount of the monthly rent, the number of square feet of warehouse space rented, and the length of the lease. It would be unreasonable to find that the alterations rendered the amendments so radically different as to preclude coexistence with the original Lease. Therefore, the Court must conclude as a matter of law that no extinctive novation occurred.

### C. Article 1233—Intent Contrary to Words

█ Dexion also argues that Ceramic knew that Dexion's intent was to guaranty the lease for a maximum of ten years and to secure warehouse space for its subsidiary. Citing Article 1233 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31 § 3471,[5] Dexion postulates that, because it was clear to Ceramic that Dexion never intended to assume the risk of a guaranty on behalf of a company in which it had no interest whatsoever, without receiving any compensation, the Court should not permit Ceramic to enforce its guaranty. Again, Dexion's argument is flawed.

First, with respect to the ten year limit on the guaranty, Dexion's argument is belied by the terms of the Guaranty, which clearly state that "renewals and extensions" would be protected by its obligation. Nothing in either the Lease or the Guaranty expressly limits the number of extensions or renewals or the ultimate duration of the Lease. The Lease does provide an option for a five year renewal. Defendant argues that this option implies that it is the only extension envisioned by the Lease. First, the Court holds that the option does not imply such a limit. The option guarantees a certain, limited increase in rent and that the remaining terms and conditions of the Lease would remain in force for the five year extension. In other words, the option guaranteed a certain, specific extension. But that does not preclude additional or alternate extensions. Nor would it be reasonable to infer from the inclusion of the option provision an intention to preclude additional or alternate extensions. Such a limitation is not in the contract, and the absence of that inference does not render the option provision impotent. Therefore, the Court must presume that had such a limitation been desired, it would have been expressed. P.R. Laws Ann. tit. 31 § 3473 ("However general the terms of the contract may be, there should not be understood as included therein things and cases different from those with regard to which the persons interested intended to contract"); *Mario Mercado e Hijos v. Olivieri*, 60 P.R.R. 855 (1942), *affirmed*, 322 U.S. 465, 64 S.Ct. 1118, 88 L.Ed. 1396 (1944) (if the terms of a contract are clear and leave no doubt as to the intention of the contracting parties the literal sense of its stipulations should be followed, and under this section it should not be construed as including things different from those with respect to which the persons interested intended to contract).

Second, with respect to Dexion's argument based on its intention to guaranty the lease only because it had an interest in Caribe obtaining warehouse space, the Court finds Dexion's motivations immaterial. Clearly, Dexion would not have guarantied the Lease it if had no interest in Caribe. But in order to help Caribe obtain that Lease, it contracted to insure Ceramic's rent, using the terms as found in the Lease and the Guaranty. Ceramic had the right to seek consideration for its warehouse space, and it obtained the Guaranty as part of that consideration. The Guaranty did not contain a limitation such that Dexion would continue to honor its obligation only so long as it had an interest in

5. "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words appear contrary to the evident intention of the contracting parties, the intention shall prevail."

Caribe. Absent an express provision to that end, the Court would transgress the bounds of reasonable contract interpretation by inferring such a limitation. To do so would unfairly and improperly reduce the value of the Guaranty to Ceramic.

To illustrate the impropriety of Dexion's requested interpretation, we take an extreme case. What if Dexion had sold Caribe a week after signing the Guaranty? Would it be reasonable to find in the Guaranty an implied limitation voiding Dexion's obligation. Obviously not; Dexion's Guaranty was part of the consideration for which Ceramic bargained and voiding it based on Dexion's unexpressed, tangential motivation would wrongly deprive Ceramic of the value of its contract. The principle is not bound by time, but extrapolates indefinitely—voiding Dexion's obligation based on its unexpressed, tangential motivations would impermissibly deny Ceramic the value of the consideration it bargained for and obtained.

### D. Ceramic's Bad Faith

 Finally, Dexion urges that Ceramic be judicially estopped under the doctrine of impediment ("doctrina de impedimento") and/or the doctrine of one's own acts ("doctrina de los actos propios"). Defendant asserts that Ceramic acted in bad faith or with inexcusable neglect by not searching for a new guarantor or requesting Dexion to reaffirm its Guaranty upon learning of Caribe's sale to Mr. and Mrs. Pascual Rojas. This contention is frivolous.[6]

 First, Dexion has provided no proof that Ceramica in fact knew of the sale. Second, Dexion has provided no proof that Ceramica failed to search for a new guarantor. Therefore, the factual basis for this defense cannot even be considered. But even more importantly, even if Ceramica knew of the sale and had failed to attempt to find a new guarantor or obtain Dexion's "reaffirmance," estoppel would have no application. Estoppel works to protect a party made ignorant of its potential liability by the wrongful action or inaction of the person against whom

the estoppel is claimed. But Dexion knew of the Lease and Guaranty—it signed both. Ceramica's failure to remind Dexion of its promises cannot be termed bad faith or misleading. If Dexion forgot about the Lease and Guaranty or failed to foresee liability thereunder, it did so at its own peril and by its own negligence. The Court's analysis has shown as a matter of law that the Lease and Guaranty remained in full force and effect, so Ceramica was not obligated to do anything.

If either party exhibited negligence, it was Dexion. If Dexion wished to free itself of the Guaranty obligation rooted in its ownership of Caribe, it had an obligation to secure a novation. The Guaranty had value to Ceramica and its novation would have had value to Dexion. Dexion could not expect to obtain the value of that novation without consideration—i.e., that Ceramica would voluntarily give up security for its Lease simply because Dexion's motivation for providing that security no longer existed. Dexion's decision to sell Caribe was a unilateral one with no benefit for Ceramica. Dexion's decision had no power, of itself, to deprive Ceramica of a valuable asset. Dexion's failure to realize this and take appropriate action to protect itself was negligent.

### IV. CONCLUSION

Dexion and Ceramica entered into an agreement for the benefit of both. Neither party urges that agreement was not made at arms length. Ceramica gave consideration for Dexion's Guaranty. The terms of the Guaranty were such that it had the potential to obligate Dexion indefinitely. Nothing happened between 1973 and the date that Caribe defaulted on the Lease that extinguished Dexion's obligation. The mere fact that Dexion now regrets having agreed to potentially long-lasting Guaranty is of no legal moment and does not, of itself, serve to extinguish its obligation. Nor did any of the Amendments to the Indenture of Lease. Nor did the fact that one extension agreement was signed several weeks after the prior extension expired. Based on the above analysis, the Court

6. The Court recognizes that this last argument would not be frivolous had any of Dexion's other arguments been meritorious, but as the Court found no worth in Dexion's previously analyzed contentions, this final argument cannot be sustained.

holds that the Guaranty and Lease Agreement bind Dexion, and Dexion is obligated to pay Caribe's rent under the final extension of the Lease. Therefore, the Court hereby **ENTERS JUDGMENT FOR PLAINTIFF CERAMIC ENTERPRISES, INC. ON THE ISSUE OF LIABILITY UNDER THE GUARANTY AGREEMENT.** The issue of damages has not been presented to the Court. Plaintiff did not request a jury trial. The Court believes that damages can be resolved without oral arguments. Therefore, the Court hereby **ORDERS** the parties to provide the Court with their arguments and evidence regarding damages on or before February 20, 1998. Replies may be filed on or before February 27, 1998. If the Court determines that a hearing on damages is required, one will be scheduled forthwith. The parties are also encouraged to discuss settlement.

IT IS SO ORDERED.